## ALBERT BROWN *v.* STATE.

[54 South. 305.]

1. CRIMINAL LAW. *Indictment.* *Code* 1906, § 1237. *Murder.* *Malice.* *Evidence.*

Code 1906, § 1237, providing that every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit a felony, or to do any unlawful act, etc., shall be guilty of manslaughter, does not prevent a party so killing another from being indicted and convicted of murder. It is is a question for the jury on the trial under an indictment for murder, in such case, to say on a consideration of all the facts and circumstances whether the offense is manslaughter under the statute or the graver offense of murder.

2. SAME.

A property owner has the right to arm himself to resist the commission of a trespass, but his right to use a deadly weapon is limited to cases where he has to protect his own life from a felonious assault by a resisting trespasser.

3. MURDER. *Malice.* *Evidence.*

The malice essential to a conviction of murder may be ascertained from previous threats and measures taken in preparation, and too, may arise suddenly and be implied from circumstances as from the intentional use at the outset of a deadly weapon.

4. DISTRICT ATTORNEY. *Improper remarks.*

Where the father and brother of accused are present at the trial and equally accessible to the state as to the defendant, it is reversible error for the district attorney in his closing argument over the objection of defendant to comment, on the fact that these witnesses were not called upon by the defendant to testify.

5. SAME.

The rule that the failure of either party to examine a witness equally accessible to both, offers no foundation for a prejudicial inference, applies to both criminal and civil proceedings.

APPEAL from the circuit court of Lee county.
HON. JOHN H. MITCHELL, Judge.

Albert Brown being convicted of manslaughter appeals.

The facts are fully stated in the opinion of the court.

*Clayton, Mitchell & Clayton,* for appellant.

The sixteenth assignment of error refers to the action of the court in permitting counsel for the state to comment on the failure of the defendant to produce his brother and father as witnesses in his behalf. The attention of the court was called at the time the argument was being made, and a special bill of exceptions taken at that time. Under the testimony in this case it is as reasonable to believe that defendant's brother or his father did the killing as that defendant did it. This being true it was certainly error for the court to permit the counsel for the state to comment upon the failure of the defendant to produce these witnesses. If the defendant's brother did the killing he could not be compelled to testify because of the constitutional guaranty that a person will not be compelled to incriminate himself.

Then is the defendant's case to be prejudiced before the jury because he doesn't produce his brother as a witness, to go upon the stand and admit his guilt, a thing that he could not be compelled to do. Argument of counsel before the jury was in effect that the defendant must be found guilty because he did not produce the man who did the killing. It has been held many times in this state that comment on the failure of a defendant to produce his wife as a witness in his behalf, is reversible error; and the reason of this rule is well set out in *Cole* v. *State,* 75 Miss. 144.

It is because the law gives the defendant the privilege of using his wife as a witness in his own behalf, but the state is denied that privilege. Any argument on the part of counsel for the state, drawing inferences unfavorable to the defendant, based upon his failure to pro-

duce witnesses not under his control and power is fatal error.

In *Johnson* v. *State,* 63 Miss., on page 316, the court says, "It is true that generally unfavorable inferences may be indulged in against a party who fails to produce material and necessary testimony, which is within his power and control, but this rule has never been applied to cases where the law on grounds of public policy, has established privileges against being compelled to produce it."

The law has established a privilege as to this kind of testimony, by way of a constitutional guaranty that a person will not be compelled to incriminate himself. Would it be contended that defendant could have compelled his brother to testify, if his brother is the party who did the killing? Then if not why should his case be prejudiced by comment of counsel on his failure to have his brother produced as a witness, if he could not compel him to testify? The argument before the jury amounted to saying that this defendant should be convicted because his brother and father would not come to his rescue, and admit their guilt. This was beyond the bounds of legitimate argument, and placed a matter in the scales against defendant which the principles of our law condemns.

*Boggan & Leake,* for appellant.

The contention of the state in this case was that the person that did this killing was guilty of murder and that of the appellant was that he could not have been guilty of anything but manslaughter. If one of these contentions is right then the other is wrong; we believe that this case clearly comes under section 1237 of the Code of 1906, which reads as follows: "Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or to do any unlawful act, or after such attempt

shall have failed, shall be guilty of manslaughter."
Also, see *Long* v. *State,* 52 Miss. 23.

It would certainly be a hard law that would give the
person committing an offense less than felony mentioned
in section 1233 of the Code of 1906, the benefit of the
mitigation of his offense to the crime of manslaughter
and then refuse to give a man the same benefits, that
was at the time of the killing trying to protect his prop-
erty against thieves as was the case here and about
which there is no controversy.

We think the case cited by associate counsel of *Virgil*
v. *State,* 63 Miss. 319, decides this question.

The sixteenth assignment of error refers to the action
of the court in permitting counsel for the state to com-
ment on the failure of the defendant to produce his
brother and father in his behalf and we submit that this
was fatal error. For the facts in this case show it was
just as reasonable to believe that the brother or father
of appellant did this as that the appellant did it himself,
and if they did, or either of them, then they could not
have been made to go on the stand and incriminate them-
selves. It is a long established principle of law that a
person cannot be made to incriminate himself and that
it has been decided in this state on the failure of the
defendant to produce his wife as a witness for him, is
reversible error. See *Cole* v. *State,* 75 Miss. 144.

If appellant's father and brother were not guilty of
anything and were not connected with this crime in any
way, then the state had the same opportunity to pro-
duce them as witnesses that the appellant had, as it is
shown by the facts that both of them were here present
at the trial and were accessible to either party and it
was as much the duty of the state to have them as it was
of the defendant. This being the case it certainly seems
unjust to allow the state to make such remarks after it
had the opportunity to produce the same witnesses.

*C. P. Long,* for appellant.

. Associate counsel have argued the sixteenth assignment of error, and covered the greater part of our contention in reference to the same, and have cited several cases bearing on the subject.

The question of whether the failure of the party to produce a witness, who is equally as accessible to one side as to the other, is a legitimate subject for comment by counsel, and is a circumstance from which unfavorable presumptions arise against the party so failing to produce such witness, is not settled by a uniform chain of authorities, but different courts look at it and have decided the question in different ways.

In Alabama, in the case of *Hutcherson* v. *The State,* 50 So. Rep. 1027, the appellant was convicted of murder and testified that a certain doctor named was attending her and that she was sick at the time of the killing. The doctor lived within the state, and it did not appear that he was not as accessible to the prosecution as to the defense, and it was held to be reversible error for the court to allow the state's attorneys to comment upon the failure of the accused to put such doctor on the stand.

In *Richburger* v. *State,* 44 So. Rep. 780 (latter part of opinion), although the objectionable argument was not excepted to in the lower court, and appellant did not get the benefit thereof, which is a Mississippi case, the court says:

"It is the duty of trial judges to give attention to the argument of counsel in every case, especially in criminal cases, where the temptation to exceed proper limits, seems to be greater, and with or without objection, to exercise the power in them vested, to see that the trial is fair and impartial, and the argument of counsel is a part of the trial," etc.

In the case of *Crawford* v. *State,* 112 Ala. 1, the evidence disclosed that one Bowman was an eye-witness of the tragedy under investigation, and was present in

court, but was not called to the stand by either side. One of defendant's counsel, in his argument said in substance, that the state had failed to examine this eyewitness to the homicide, who knew more about it than anybody else present at the time of the killing, and that this was a circumstance to be considered by the jury in favor of the defendant. On objections, the court ruled that this argument was improper and exception was duly taken to the ruling of the court. The supreme court in delivering its opinion on appeal said:

"That it was proper to restrain counsel for defendant of the proposed argument to the jury. That it was not legitimate, whether applied to the state or to the defendant; that Bowman was in court, as accessible to one party as to the other, and all that could possibly be said, that either party did not deem it necessary to place him on the stand, adding his testimony to that which had been adduced."

In *State* v. *Cousins,* 58 Ia. 250; *State* v. *Rosier,* 55 Ia. 517, it is held that whatever inference may be drawn against a party by reason of his failure to produce evidence in "his control," are liable only on the theory that he willfully withheld such evidence.

In the dissenting opinion of Chief Justice Simmons in the case of *Western Railroad Co.* v. *Morrison,* 66 Am. St. Rep. 180, can be found a collection of a good many authorities on this question.

*Carl Fox,* assistant attorney-general, for appellee.

It is contended that the court erred in refusing an instruction that the jury could find the defendant guilty of murder, because, it is said, that the deceased was engaged in the commission of a misdemeanor at the time he was killed, and under section 1237, Code 1906, the person who killed him could not have been guilty of anything more than manslaughter. It is said by counsel for appellant that the question whether or not section

1237 of the Code was applicable, was purely a question of law; that if it was not applicable, then the defendant, if he was the man who fired the shot, was guilty of a cold-blooded murder. Counsel rely on the case of *Long* v. *State,* 52 Miss. 23. This case so far from supporting their contention is an authority directly against it. Counsel's contention in its last analysis is that whenever a person is killed while he is engaged in the commission of a crime, by reason of the fact that he is committing a crime at the time, his assailant cannot be guilty of murder. The court did not so hold in the *Long case, supra*; on the contrary, Judge Chalmers, speaking for the court said, at page 40: ''The party slaying, however, cannot take shelter under it (the Code section in question) if the jury should be of opinion that there was actual malice. The killing must have occurred *bona fide* in the resistance to the unlawful act, and not out of any previous ill-will or any personal grudge then and there engendered.''

The question whether or not the killing was done in a *bona fide* effort to prevent the stealing of the melons or whether it was malicious and willful, was submitted to the jury by correct instructions, and this was in exact accord with the *Long case, supra,* which is cited by appellant.

Objection was made, and a special bill of exceptions taken to certains remarks of the prosecuting attorneys. The remarks objected to were comments upon the fact that the father and brother of the defendant, both of whom were present at the trial, as is shown by the testimony in the case, were not offered as witnesses in his behalf by the defendant. Counsel cite several cases from other states holding that it was reversible error to permit counsel to comment upon the fact that certain witnesses who probably knew something of the case, were not offered by the defendant, where such witnesses were equally available to the state. Counsel also cites

two Mississippi cases: *Cole* v. *State,* 75 Miss. 144, and *Joynson* v. *State,* 63 Miss. 313. In these Mississippi cases, however, the comment was upon the fact that the defendant had not introduced his wife as a witness in his behalf, and the decisions turn upon the fact that we have a special statute regarding the right of a husband to introduce his wife. The authorities are conflicting as to the precise point at issue here, but the following considerations ought to affect the decision of this court:

First, the legislature long ago saw fit to prohibit by statute any comment by the prosecuting attorney upon the fact that the defendant himself does not testify. It would seem that while this subject was under consideration at that time, that legislature, and all succeeding legislatures, have not thought it wise to prohibit comment upon the fact that witnesses, other than defendant, were not introduced.

Second, it has been universal practice, so far as the experience of the writer of this brief goes, for prosecuting attorneys to make such comment without it ever being thought improper. It has thus been a sort of common law rule in our state that such comments were proper to be made.

Third, in the case at bar, while the father and brother were available to the state, so far as their bodily presence was concerned, they were not equally available to the state as witnesses because they were necessarily hostile to the state. Logically, there can be no question that the inference does follow from the fact of their nonproduction by the defendant, that their testimony would have been unfavorable to the defendant.

Argued orally by *C. P. Long* and *Guy Mitchell,* for appellant, and *Carl Fox,* assistant attorney-general, for appellee.

McWILLIE, special judge, delivered the opinion of the court.

The appellant, on an indictment for the murder of Alonzo Addison, was convicted of manslaughter. The deceased, a youth under twenty years of age, was at the time of the homicide engaged, with two companions, in stealing watermelons by night from the melon patch of a brother of the appellant. It is claimed on behalf of the appellant that the court below erred in submitting to the jury the question of whether or not he was guilty of murder; manslaughter being the only crime of which he could be convicted, since the deceased was himself at the time offending against the law.

Section 1237, Code of 1906, is relied on in support of this position. We quote it as follows: "Killing unnecessarily, while resisting effort of slain to commit felony or do unlawful act, etc.—Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony or to do any unlawful act or after such attempt shall have failed, shall be guilty of manslaughter." With the propriety of returning an indictment, valid upon its face, this court can have no concern, in the absence of any showing of misconduct in the proceedings before the grand jury. The indictment being duly returned, the accused was triable on it, and the objection founded upon the above statute can only relate to the proceedings of the trial.

The greater charge of murder includes the lesser charge of manslaughter, and the conviction of the lesser crime was in any event within the statute. But on the trial there was evidence tending to show facts which fully warranted the court below in submitting to the jury the question of whether or not the appellant was guilty of the greater crime of murder. The malice essential to a conviction of murder may be ascertained from previous threats and measures taken in prepara-

tion, and, too, may arise suddenly and be implied from circumstances, as from the intentional use at the outset of a deadly weapon. There was evidence that appellant had, on the day preceding the night of the tragedy, threatened that the next trespasser upon the melon patch would be found there the next morning, which threat, while not directed against the deceased individually, was directed against a class of which he unfortunately became a member, and that at the time of the killing appellant was in ambush, armed with a double-barreled shotgun, and fired upon the deceased when the latter was only ten or twelve steps distant and in an attitude wholly inoffensive, except as to the prosecution of the trespass upon the melon patch, and deceased and his companions all being unarmed. It is true that the gun was loaded with bird shot, and might not, when so loaded, have been a deadly weapon when fired from a greater distance; but, as the result showed, and as the appellant must be treated as knowing, it was a deadly weapon when directed against a human being at such short range.

The case of *Long* v. *State*, 52 Miss. 23, in which the statute above mentioned was considered, affords no sanction for the view that upon an indictment for murder the fact that the unnecessary killing was of one engaged in the commission of a misdemeanor precludes an inquiry into the question of malice, in order to determine whether the crime was murder or manslaughter. In a murder trial, where self-defense was set up and the statute in question was relied on, the case being parallel with the one at bar in so far as the power of the jury to convict either of murder or manslaughter was concerned, this court declared: "Code 1892, § 1159, has never yet been and never will be applied, in a case like this, to reduce a homicide from murder to manslaughter." *McMaster* v. *State*, 29 South. 522. In another murder case, where the statute does not clearly appear to have been relied on, this court condemned an instruction for the state on

the ground that a killing in self-defense is not an unnec-
essary killing; and it may be that the case last cited
was predicated on the fact that a killing cannot be both
necessary and unnecessary. *Brandon* v. *State,* 75 Miss.
904, 23 South. 517.

It is undeniable, however, that a trespasser engaged
in the commission of a misdemeanor may be the subject
of a murder, as well as another, and it is a question for
the jury on the trial under an indictment for murder to
say, on a consideration of all the facts and circum-
stances, including the character and extent of the means
employed against the trespasser, together with the man-
ner of their application, whether the offense is man-
slaughter under the statute or the graver offense of
murder. In the case of *Ayers* v. *State,* 60 Miss. 709, the
right of a property owner to arm himself to resist the
commission of trespass is recognized; but his right to
use a deadly weapon is limited to cases where he has to
protect his own life from a felonious assault by a resist-
ing trespasser.

In his closing argument for the state the district at-
torney commented in very strong language upon the
failure of the appellant to introduce as witnesses his
father, W. S. Brown, and his brother, Henry Brown,
both of whom lived but a short distance from the melon
patch, though in separate houses, and were the first per-
sons to reach the scene after the occurrence of the homi-
cide. The circuit judge declined to intervene on the
objection of the attorneys of the accused, and his action
in overruling their objection was duly excepted to. It
appears, from the remarks of the district attorney to
which the objection was offered, as well as in the testi-
mony, that both the father and brother of the accused
were in attendance upon the trial and as accessible to
the state as to the accused. Under such circumstances,
the remarks of the district attorney were unwarranted
and constitute reversible error. This precise question

has never been heretofore decided in this state, but elsewhere authority is not lacking. The rule that the failure of either party to examine a witness equally accessible to both offers no foundation for a prejudicial inference applies to both civil and criminal proceedings. The cases of *Crawford* v. *State,* 112 Ala. 661, 21 South. 64; *State* v. *Cousins,* 58 Iowa 250, 12 N. W. 281, and *State* v. *Rosier,* 55 Iowa 517, 8 N. W. 345, cited by counsel for the defendant, are criminal cases in which it was so held. To these may be added the following: *Brock* v. *State,* 123 Ala. 24, 26 South. 329; *State* v. *Fitzgerald,* 68 Vt. 125, 34 Atl. 429; *People* v. *Quimby,* 6 Cal. App. 482, 491, 92 Pac. 493. *Vide,* also *People* v. *Fowler,* 104 Mich. 449, 62 N. W. 572. The following civil cases are to the same effect: *Mutual, etc., Co.* v. *Perkins,* 81 Ark. 87, 98 S. W. 709; *Scoville* v. *Baldwin,* 27 Conn. 316; *Sears* v. *Duling,* 79 Vt. 334, 65 Atl. 90; *Malone* v. *Gates,* 87 Mich. 332, 339, 49 N. W. 638; *Jordan* v. *Austin,* 161 Ala. 585, 50 South. 70; *Louisville, etc., R. R. Co.* v. *Sullivan, etc., Co.,* 126 Ala. 95, 27 South. 760.

In the case of *Story* v. *Railroad Co.,* 70 N. H. 364, 48 Atl. 288, the general rule that no inference can be drawn because a witness equally at the command of each party is not called was fully recognized, though held to be inapplicable to the case of a railroad company failing to produce an engineer, its employe, who was the very man who caused the action in question. In the case of *Western, etc., R. Co.* v. *Morrison,* 102 Ga. 319, 29 S. E. 104, 40 L. R. A. 84, 66 Am. St. Rep. 173, another civil case, the contrary view was expressed by a majority of the court; but the dissenting opinion of Chief Justice Simmons is stronger in both reason and authority than that of the majority of the court, and is really the fullest and ablest dissertation on the subject that a diligent search of the books has afforded. Among other matters considered, he shows quite plainly that the fact that the persons not examined as witnesses are relatives of the

accused affords no ground for a prejudicial inference, and thereupon no excuse for comment on the failure of the accused to put them on the stand.

There was in the present case evidence for the accused tending to prove an alibi, and also evidence tending to impeach the only two eye-witnesses of the homicide, upon whose testimony rested the identification of the accused as the slayer. The case was, therefore, one where the jury were not constrained to convict of either murder or manslaughter; and it was in his closing argument that the district attorney made use of the objectionable remarks.

As the case is to go back for a new trial, we refrain from all comment on the evidence, but dispose of the question arising under section 1237, Code of 1906, in order that there may be no misapprehension on the subject when the case is tried anew.

*Reversed and remanded.*