## ROSTELLO et al. v. UNITED STATES.

Circuit Court of Appeals, Seventh Circuit.
December 24, 1929.

No. 4283.

Harold J. Bandy, of East St. Louis, Ill., for appellants.

Ralph F. Lesemann, Asst. U. S. Atty., of East St. Louis, Ill.

Before ALSCHULER and EVANS, Circuit Judges, and WOODWARD, District Judge.

ALSCHULER, Circuit Judge. Appellants, with Koch and Wencel, were indicted for conspiracy to violate the provisions of the National Prohibition Act (27 USCA) by the illegal manufacture, transportation, and possession of intoxicating liquor, and the illegal possession of stills and materials designed and intended to be used in the illegal manufacture of intoxicating liquor. They were tried together, and all but Koch, who pleaded guilty at the close of the government's evidence, were convicted and sentenced, and of these all but Wencel appeal.

It is contended for the government that there is here no lawful bill of exceptions, in that it was not presented to the District Judge during the term at which the judgments were entered, nor any extension thereof made within the term. The judgments were entered September 26, 1929, one of the days of the September term of the court. The bill of exceptions bears date and was filed October 21. Included in his certificate thereto is the following statement of the judge:

"This bill of exceptions was first presented to me on October 21, 1929; the trial was had and judgment entered at the September term, A. D. 1929, which expired on October 19, 1929, by order of court. Court is now in the October, A. D. 1929, term. No bill of exceptions was presented or filed during the September term. No prayer for bill of exceptions was made at said September term, and no time fixed at said September term within which bill of exceptions might thereafter be presented, filed, or settled. Consequently I am of the opinion that no such bill may now be presented. But at the earnest insistence of counsel I have hereunto attached my signature this 21st day of October, A. D. 1929."

In a supplemental proceeding in this court, brought to require the date of presenting and filing the bill of exceptions to be shown nunc pro tunc as of one of the days of the September term, there appears a copy of a written opinion or statement by the judge denying such nunc pro tunc filing. In this it is stated that after the judgment was entered the judge spent some of his time away from his district, sitting in Chicago in the District Court and Circuit Court of Appeals; that on October 4 counsel for appellants saw him there and asked for a supersedeas, and that the judge told counsel a supersedeas was denied, and that, if application therefor was made to the Circuit Court of Appeals, it might be stated that it had been denied, but that nothing was said about a bill of exceptions, or extension of time for filing the bill; that during most of the time of his absence from the District Court at Danville, Judge Wham, of that district, was sitting there, and that he had no knowledge whether or not the time for filing this bill of exceptions had been extended by Judge Wham, and that, if he had had any intimation that further time would be required, he would have extended it before adjourning the term; that when he adjourned the term on October 19 he had no reason to believe that counsel for appellants had not seen to it that appellants' rights had been protected by proper extension of time for filing the bill of exceptions; that he had correspondence with appellants' counsel on

the subject of a bill of exceptions, but that in writing to counsel, and saying he could be found on any forenoon of the following week at his office in Danville, he had no reason to believe that the time had not been extended; that he was charged with so many other duties that he could not keep in mind the various steps of cases, and would not have known, and did not know, whether the time for presentation of a bill of exceptions had or had not been extended by himself or another judge.

To appellants' petition in that matter is attached copy of the correspondence, which is as follows:

"October 17th, 1929.

"Honorable Walter C. Lindley, United States Judge, Danville, Illinois—Dear Judge: It will be necessary for me either to take or send the Rostello bill of exceptions to you in order to present it and ask to have it certified.

"Will you please let me know where you will be on Monday of next week, in order that this might be done at this time? Monday will be the most convenient day for me, but if you would prefer to see me on a different date I will change my plans to conform to your wishes.

"Yours very truly,    H. J. Bandy."

"October 18th, 1929.

"Mr. Harold J. Bandy, Atty., Granite City, Ill.—Dear Sir: I shall be in my office in the forenoons of next week, during the entire week, I think.

"Very truly yours,
"Walter C. Lindley,
"U. S. District Judge."

On the dates of both letters the September term had not yet ended. The only thing to be done was to make a timely presentation to the judge of the bill of exceptions, which had the approval of the United States attorney and was ready to be presented before this correspondence began, and which was the sole subject-matter of counsel's letter. If, in answering the letter on the 18th, the judge had realized that there was no order extending the time for filing the bill of exceptions, he would doubtless either have entered such an order of his own motion, or would not on the 19th have adjourned the term sine die. Had he then deemed it necessary to order the term closed on the 19th, without extension of appellants' time, on receipt of counsel's letter he would doubtless have wired or phoned him that the presentation must be made before ending the term, and in all probability the bill of exceptions would have been there on the 18th. It would require no evidence or statement of the judge to indicate that he did not have this matter in mind when he adjourned the term.

But this is not a matter of intent. The effect upon appellants would be precisely the same, whether by the adjournment of the term on the 19th it was or was not intended to prevent the lawful presentation of the bill of exceptions for the prosecution of these appeals. Appellants' counsel was in position to have presented the bill of exceptions within the term, had he suspected the term would be adjourned on the 19th. The judge's letter of the 18th naturally led counsel to believe that presentation on any forenoon of the following week would be in sufficient time. No doubt the judge himself assumed this was so, and, had he known and realized otherwise, surely a different course would have been pursued.

We are satisfied that the case falls fairly within the purview of In re Federal Life Ins. Co., 248 F. 908, in which we held a bill of exceptions to have had timely presentation. There the bill was ready, and some of its features were discussed with and in the presence of the judge during the term, although not physically shown to the judge till after the term had expired. Since the bill of exceptions was in fact presented to the judge, signed by him, and filed in the clerk's office, it will not be necessary now to order this to be done, but we may and do consider the case as if the bill of exceptions had been presented, approved and filed within the September term. So regarding it, we proceed to the merits.

Practically but a single proposition is urged, predicated upon a portion of the charge to the jury, wherein, discussing appellants' side of the case, the court said:

"You must ask yourself whether the circumstances corroborate them [the defendants] or whether they do not, and in that connection you have a right to take into consideration the fact that the defendant Koch, to whom they say they sold their goods, has pleaded guilty. He is in the courtroom, he is a competent witness, and the presumption of law is that if the defendants do not call him as a witness when he is available, if the opportunity offers itself, if it is peculiarly within their power to produce him or call him, he would not furnish testimony favorable to them, and you have a right to ask yourselves why, when this defendant is in the courtroom, the other defendants did not call him to the witness stand and examine him as a witness. You have a right to indulge the presumption

or to draw the inference that I have mentioned in that respect."

In overruling the objection to this charge the court further said:

"There is no presumption against a defendant who does not take the stand himself, but the jury has a right to indulge a presumption, when a witness is in the courtroom, is available and can be called, and is a codefendant and is not called to the witness stand, that his testimony, if called to the witness stand, would not corroborate the defendant."

Defendant Koch had been separately represented by counsel, who, after the employment and before the trial, had entered into law partnership with the counsel who represented appellants. At the close of the government's case Koch's counsel, as well as the others, unsuccessfully moved for a directed verdict. Thereupon Koch's plea of not guilty was withdrawn, and a plea of guilty substituted. From the court's charge it appears that Koch then remained in the courtroom until the trial ended.

As to the principle which this charge mainly violates, the general rule is stated in 16 Cor. Jur. § 1023, as follows:

"*Failure to Call Witnesses.* The neglect or failure of accused to call as witnesses those who could testify to their own knowledge as to material facts raises no presumption of law that, if called, they would have testified unfavorably to him and while the jury may consider his failure to produce or his endeavor to produce such evidence as a circumstance in determining his guilt, and may draw inferences therefrom, this doctrine is to be applied cautiously, and only where it is manifest that the evidence is in the power of accused to produce and is not accessible to the prosecution, the rule that no unfavorable inference can be drawn from the failure to produce or to examine a witness who is equally accessible to both parties being applicable in criminal as well as in civil cases."

10 R. C. L. 886, says it is the general rule "that a party is not to be prejudiced by his failure to call a witness who is equally available to the other side." Controversies respecting the application of the rule have arisen more frequently where counsel, in argument, commented on failure of the opposite party to call certain witnesses, or produce books or papers. The propriety of such comment is dependent primarily on the facts of each case. In many, such as People v. Munday, 280 Ill. 32, 117 N. E. 286, 292, judgment of conviction was reversed because of comment of the state's attorney on Munday's failure to call as a witness a co-defendant not on trial, where objection to such comment was overruled by the court. The subject was there exhaustively treated, and the rule stated to be that:

"While there is some apparent conflict in the authorities, the general rule is that the omission or failure of a defendant in a criminal prosecution to call as witnesses those who could testify of their own knowledge to material facts raises no presumption of law that if called they would have testified unfavorably to him, but the jury may consider his failure to produce or to endeavor to produce such witnesses as a circumstance in determining his guilt, provided it is manifest that it is within the power of the accused to produce such witnesses and that such witnesses are not accessible to the prosecution."

In State v. Fitzgerald, 68 Vt. 125, 34 A. 429, such comment was likewise held to require reversal of the judgment. In Graves v. United States, 150 U. S. 118, 14 S. Ct. 40, 37 L. Ed. 1021, the judgment was reversed because of such comments by counsel. In Brown v. State, 98 Miss. 786, 54 So. 305, 34 L. R. A. (N. S.) 811, such comment by the district attorney, on failure of the defense to produce the father and brother of the accused, was held to be reversible error.

It would seem that error through comment in argument would not compare in significance with a charge by the court to that effect. The comment, after all, is an argument of counsel, upon the case as he sees it, and, if permitted, may be subject to comment by the other side, whereas the charge of the court is an authoritative direction to the jury. If such serious consequences attach to comment by counsel, how much more seriously consequential is a charge by the court.

In State v. Cousins, 58 Iowa, 250, 12 N. W. 281, the court charged the jury that the failure of the defendant to call his co-defendant as a witness is a circumstance that may be taken against him, and the jury should give it such weight as it is entitled to have. The Supreme Court said that the doctrine "is to be cautiously applied, and only in cases where it is manifest that proofs are in the power of the accused not accessible to the prosecution."

"A degree of discredit is by the state cast upon the accomplice by accusing him of a crime, and the defendant might well conclude that his testimony would have but little weight. The accused may in fact be innocent, and the alleged accomplice guilty. Under such circumstances the accused might be greatly prejudiced if he should call his co-defendant, who might shield himself at the ex-

pense of the other party. * * * In addition to all this the alleged accomplice was as accessible to the state as to the defendant."

As to the standing of the accomplice with the jury, because of his alleged complicity, we have here the added fact that the accomplice had pleaded guilty, whereby suspicion and discredit because of his alleged complicity was confirmed by his plea. In Longacre v. Yonkers R. Co., 236 N. Y. 119, 140 N. E. 215, 217, 28 A. L. R. 1030, the trial court charged very similarly to that here complained of. On appeal, the court, reversing the judgment for this alone, said, "she was in court, as much subject to the call of the plaintiff as of the defendant." Commenting on the general proposition, it was said in Grunberg v. United States (C. C. A.) 145 F. 81, 88:

"These rules never have been carried so far as to imply anything against a person charged with an offense by reason of his not calling witnesses, unless witnesses who were presumed to have special knowledge, and as to whom the alleged criminal may be presumed to have had special information or peculiar control, while the prosecuting authorities had neither."

A similar charge was given in Egan v. United States, 52 App. D. C. 384, 287 F. 958, 970, and the court quoted the rule as follows:

" 'The general rule is that no such inference may be drawn by a jury because a party fails to call as a witness one who is in a legal sense a stranger to him and is equally available to the other side' [citing cases]. These parties had no legal relation to defendant in this case, and were equally available to the government."

Of course there are many instances where comments by counsel or charge by a court upon the unfavorable presumption to be drawn from failure to produce witnesses or papers were held to be proper. But it will generally be found that in most of them there is the element of the absent witness or papers being *peculiarly within the control* of the party whose failure to call or produce them is the subject-matter of the comment. In United States v. Carter, 217 U. S. 286, 30 S. Ct. 515, 54 L. Ed. 769, 19 Ann. Cas. 594, there was strong comment by the Supreme Court on Carter's failure to secure the testimony of his father-in-law, dead at the time of that trial and theretofore long residing abroad, outside of the court's jurisdiction, but whose evidence it was concluded Carter might have secured had he been so minded. Also in Mammoth Oil Co. v. United States, 275 U. S. 13, 48 S. Ct. 1, 72 L. Ed. 137, where the Supreme Court commented vigorously on the failure of Sinclair, the president and a large stockholder of the corporation, whose oil leases the government sought to void, to testify on matters considered by the court peculiarly within Sinclair's knowledge. Both were chancery cases with no jury to determine the fact issues.

We wholly fail to see how the man Koch or his evidence was peculiarly within the control of any of these defendants. Several of them denied all acquaintance with him, and all denied any knowledge of or interest in his affairs. He had pleaded guilty, and was thenceforth either actually or potentially in the physical custody of the government, awaiting such sentence as might be imposed, and might well be suspected of a disposition not to antagonize the prosecuting officers by testifying favorably to the other defendants. His continued presence at the trial after his plea of guilty, although indicating not the slightest impropriety, was nevertheless by grace of the court or of the prosecuting officers—surely through no procurement or influence of the remaining defendants. The mere statement of the situation must convince that if Koch was then *peculiarly within the control* of any one, it was the government and not appellants. In any event, he was at least as available to the government as to the other defendants. Either had the power to call him, and neither may invoke against the other any presumption for failing to do so.

It is contended for the government that, even if the charge is erroneous, the judgments should nevertheless stand, because the guilt of appellants is so clearly apparent. The charge is conspiracy, and each of the appellants testified denying his guilt. Each said he knew of no still, and had no knowledge that the sugar and yeast sold and delivered to Koch were to be used for making intoxicating liquors, or in any manner violating the law. Each denied any interest in the still or any product of it, or any part in the handling or disposition of the product. Whether the District Court or this court believes their testimony is quite beside the question. The alleged incriminating facts and circumstances were sharply contradicted. The charge complained of raised up against appellants a witness who, though silent, was probably more potent in securing the verdict against them than any item of evidence in the record.

The charge was erroneous and highly prejudicial, requiring the judgments to be, and they are, reversed, and the causes remanded.