### 382. JACKSON *v.* THE STATE.

1. The evidence in this case authorized the conviction of the defendant. "A father who within this State wilfully and voluntarily abandons his child before it is born, and persists in the abandonment afterwards, leaving it in a dependent and destitute condition, is guilty of a misdemeanor."

2. While the right of cross-examination, thorough and sifting, should not be abridged, nevertheless, even upon cross-examination, where an answer to a question propounded to a witness is refused by the court, and such refusal is assigned as error, it must appear that counsel, on the trial, stated to the court, either what he expected to prove, or (if that is impracticable or impossible) what he desired to prove, by the answer to

such rejected question. Upon failure of such statement to the trial court, this court can not review the alleged error.

3. In the absence of evidence sufficient to rebut the presumption of paternity, arising from the marriage relation, it is not error to refuse to charge that the defendant would not be guilty of abandonment if the jury are satisfied that the defendant never acknowledged the paternity of the child, and has always denied it.

4. The issue as to whether or not the abandonment is wilful is not illustrated by the conduct or sayings of the reputed father, unless it be shown by the evidence that he is not such father.

Accusation of abandonment of child, from city court of Sandersville—Judge Hyman. February 4, 1907.

Submitted April 22,—Decided May 3, 1907.

*E. W. Jordan,* for plaintiff in error.

*G. H. Howard, solicitor,* contra.

Russell, J. Rufus Jackson was convicted of abandonment of his minor child. The evidence showed that he married Lillie Jackson, and, before the birth of the child, abandoned her, and never lived with her or contributed to her or the child's support. The mother was shown to be unable to work, and the child suffered cold and hunger by reason of the abandonment. The father made no provision for it, or for the mother, at the time of its birth, but voluntarily and wilfully abandoned it; and though it appeared that the child's grandmother contributed some to its support, and to that of the mother, the evidence shows that this was only at times, and that frequently, from the time of the child's birth, it was dependent and destitute, and actually suffered for lack of food, clothing, and fire to keep it warm. It was argued by the movant that no date is shown when this dependency existed, and whether it occurred before the finding of the indictment. A fair and reasonable construction of the evidence of Lillie Jackson is that this condition existed and continued from the child's birth, on March 22, 1906. The indictment was found in September, 1906.

The defendant, in his motion for new trial, which was overruled, in addition to the general grounds, contends that the court erred in refusing to allow the prosecutrix, as a witness, to answer the following question propounded to her by the defendant's counsel: "How much salary per month does your mother earn?" Movant is unable to state what answer would have been made by said witness, to said question, she being the prosecutrix and leading wit-

ness for the State. The purpose of said question, as insisted, was to elicit from the witness, upon cross-examination, facts from which the jury could infer that the mother of the prosecutrix and the grandmother of the child earned a sufficient salary to support the child, movant contending that, the evidence showing that the child was supported by the grandmother and lived with its mother in the house of the grandmother, the amount of her earnings was a material fact, shedding light upon whether or not the child was in a destitute and dependent condition. It is further insisted that the court, in refusing to allow the witness to answer said question, erred because it was an abridgement of movant's right to a full and complete cross-examination of the witness called against him, because the matter sought from the witness was relevant and material upon the issue of his guilt or innocence. In another ground of the motion it is contended that the court erred in refusing to give in charge to the jury the following instruction, the same having been requested in writing: "If you believe from the evidence in this case that the defendant, Rufus Jackson, has never acknowledged the paternity of the child, and has at no time regarded himself as the father of the child, or claimed the child as his own, then he would not be guilty of abandonment of child." And finally the defendant urges, as a ground for new trial, that the undisputed evidence in the case shows that the defendant has never recognized, claimed, or acknowledged at any time the fatherhood of the child, and that he has never lived with the mother of the child, nor contributed to her support, and that he instituted legal proceedings for divorce before the birth of the child; and that the offense of abandonment is not made out until it is shown that the defendant at some time claimed the child, or acknowledged its paternity.

The verdict was authorized by the evidence, unless the court erred in the ruling as to the admission of evidence, or in the refusal to charge as requested in the sixth ground of the motion, and unless these errors so contributed to the verdict as to be harmful to the defendant. There is no merit in the ground that the verdict is contrary to evidence. While it has been held in a number of cases,—those cited by plaintiff in error as well as others,—that it must be shown that the child abandoned was left by the father in a dependent and destitute condition, the jury were au-

thorized, from the evidence in this case, to find that fact fully established. And while recognizing the principle laid down in a number of decisions, ending with *Williams* v. *State, 126 Ga.* 637, that where an essential element of a crime is prescribed by law, it must both be charged and proved by the State, in the strict construction of criminal statutes, still, in a case where a father is heartless enough to add to antenuptial wrongs the desertion of his innocent offspring, this court will not be overzealous in reweighing the testimony passed upon by the jury. It is further insisted by the plaintiff in error that admitting that destitution and dependence existed, it is not shown when it existed, and whether it occurred before the finding of the indictment. The indictment was found in September, 1906. A fair and reasonable construction of the evidence for the State leaves no other conclusion than that this condition existed and continued from the child's birth in March, 1906. As to this six months before the indictment the evidence makes a clear case; and as evidence as to the condition existing subsequent to the indictment was not objected to, the error, if any, is immaterial. The evidence, in our view of the case, makes a strong, clear case of abandonment, of dependence, and destitution. This case is controlled by *Bull* v. *State, 80 Ga.* 704, in which Judge Bleckley, rendering the opinion, declares that "A father who within this State wilfully and voluntarily abandons his child before it is born, and persists in the abandonment afterwards, leaving it in a dependent and destitute condition, is guilty of a misdemeanor."

We come now to the special grounds of the amended motion. Did the court err in refusing to allow the mother of the child to answer a question as to how much the grandmother earned per month? Conceding that each party is entitled to the right of cross-examination, thorough and sifting, of witnesses called by his opponent, and waiving the fact that it does not appear that the trial court was informed what answer would be made to the proposed question, and that, for that reason, there is nothing that this court can consider upon this assignment of error, and granting that the answer of the witness would have shown an earning capacity on the part of the grandmother sufficient to support the child, there was still no error in the ruling of the court. For while it is competent, in defense of the charge of abandonment, to

show that others do provide for the support of the child, still it is not material or proper to allow testimony that others are able to do so. It can not seriously be contended that there is any legal duty on the grandmother to support this grandchild. However, as matter of law, we can not consider this assignment of error. Where error is ascribed to a court in refusing to allow a witness to answer a question, it must appear that a statement was made to the court .at the time, showing what the answer would be, or what answers were expected. *Bowden* v. *Bowden,* 125 *Ga.* 108 (1). "Where a question is asked, the answer excluded, and no statement made to the judge as to what the witness would have sworn, there is nothing before the court. It is impossible for the judge on the motion for new trial, or for this court on a bill of exceptions, to say whether the complaining party would have been benefited or injured by the answer. The witness may not have known anything of the subject inquired about; and if a new trial should be granted because the answer was excluded, it might happen that on the second trial the question would be again propounded, allowed, and the witness give hearsay, inadmissible, or irrelevant testimony, or the answer might be harmful instead of helpful, or the witness might reply, 'I do not know,' with the result that the time and money of the parties and the country had been wasted for so inconsequent a conclusion. That this is not unlikely to occur is shown by the experience of all practicing lawyers, who have often seen a long and heated argument as to the right to ask a question, followed by the laughter of all bystanders when the court held it competent, and the witness replied that he knew nothing about the matter. . . It would never do to grant a new trial until it appeared, not only that the question was proper, but that the answer was material and would have been of benefit to the complaining party." *Griffin* v. *Henderson,* 117 *Ga.* 383. It may .be considered that the strictness of this rule should be much relaxed in cross-examination, but even then, unless the nature of the question discloses the answer expected, the counsel should state to the court what he expects to prove, or if he can not make such statement, what he *wants* to prove by the witness. The right of cross-examination should in no case be abridged, but this right is granted in order to confer a substantial benefit; and as there is no duty devolving on a grandmother to support a grandchild,

we hold that any answer that witness could have made would have been so immaterial to the issue as to have in no way aided the defendant either in disproving the charge made by the State or in defending himself against it.

There was no error in refusing to charge, as requested by defendant, upon the subject of whether defendant ever acknowledged that he was the father of the child. It could not be material as to whether he claimed or recognized the child, or whether he consistently at all times denied that the child was his. The mother of the child being his wife, he is bound by the legal presumption of paternity, which can only be rebutted by proof.

*Judgment affirmed.*