[No. 2961.   Oct. 11, 1926.   Rehearing Denied Nov. 10, 1926.]

## STATE v. MARTIN.

[250 Pac. 842.]

### SYLLABUS BY THE COURT

1. The indictment is framed under the first clause of section 1481, Code 1915, and is an indictment for assault with intent to murder. It being an indictment for assault with intent to murder, under the first clause of section 1481, and the punishment being fixed by that section, section 1480 of the Code has no application, and the sentence of the court, being within the limit prescribed by said section 1481, as amended, is not excessive.

2. Section 1481, Code 1915, is not void for uncertainty or indefiniteness, at least so far as the first clause thereof, pertaining to assault with intent to murder, is concerned.

3. The absolute right of peremptory challenge of a juror, after acceptance, is not allowed, but the court, in its discretion, may allow the right to be exercised in such case.

4. The admission of evidence cannot be challenged on appeal for reasons not stated in the trial court at the time the objection was made.

5. Error in the admission of evidence is not ground for reversal if not prejudicial to the rights of the complaining party.

6. Where a medical witness has given expert opinion evidence based upon his general knowledge and experience it is not error to refuse to strike testimony of two cases within the knowledge of the witness, wherein the results were in accord with the results likely to occur, as stated in such opinion evidence, even though such knowledge was acquired partly by hearsay, especially as such opinion was not based solely or principally upon such specific instances.

---

[1] 30CJ p. 453 n. 55; p. 454 n. 64.    [2] 16CJ p. 68 n. 8; 30CJ p. 453 n. 55    [3] 35CJ p. 417 n. 17, 18.    [4] 17CJ p. 70 n. 43. .   [5] 17CJ p. 317 n. 10; 40Cyc p. 2697 n. 20; p. 2698 n. 26.    [6] 16CJ p. 880 n. 61, 68.    [7[ 17CJ p. 183 n. 65, 65 New; 40Cyc p. 2476 n. 81; p. 2496 n. 47; p. 2517 n. 78.

State v. Martin, 32 N. M. 48

7. While the right of cross-examination, thorough and sifting, should not be abridged, nevertheless, even upon cross-examination, where an answer to a question propounded to a witness is refused by the court, and such refusal is assigned as error, it must appear that counsel, on the trial, stated to the court, either what he expected to prove, or (if that is impracticable or impossible) what he desired to prove, by the answer to such rejected question. Upon failure of such statement to the trial court, this court cannot review the alleged error.

8. It is not, ordinarily, error for the prosecuting attorney to comment upon the failure of the defendant to produce a witness who is competent and cognizant of material and relevant facts.

Appeal from District Court, De Baca County; Hatch, Judge.

Isaac Martin was convicted of assault with intent to murder, and he appeals. Affirmed.

O. E. Little, of Roswell, J. F. Kelton, of Ft. Sumner, and Fleming & Neal, of Santa Rosa, for appellant.

J. W. Armstrong, Atty. Gen., and J. N. Bujac, Asst. Atty. Gen., for the State.

OPINION OF THE COURT

BICKLEY, J. The appellant, Isaac Martin, was convicted in De Baca county of assault, with intent to murder Aaron Martin. The verdict of the jury recommended clemency. The court sentenced appellant to serve a term in the state penitentiary of not less than 7 years, and not more than 10 years, at hard labor. The appellant was living on his ranch with his two sons, Aaron Martin, 12 years old, and Vearle Martin, 10 years old, and appellant's mother. Aaron Martin had been out watering the chickens and came into the house about 8 o'clock in the morning and his father, the appellant, came in shortly afterward, the appellant preparing to go to Ft. Sumner, which was approximately 30 miles from appellant's ranch. The appellant was the owner and possessor of a 32 Smith & Wesson revolver, an automatic revolver, a rifle, and a shotgun. He had been in the habit of hiding the two revolvers in different places about the house, which consisted of

one room, in order to keep people from stealing them. On the particular morning in question, he looked into a box that was on the foot of the bed and discovered that the automatic pistol was gone, whereupon he questioned his eldest son concerning it. Aaron Martin testified that he had taken the automatic pistol from the box that morning, intending to take it to school with him, and that, upon being questioned by his father and after his father had gone out again into the yard, he (Aaron) was attempting to replace the automatic pistol in the box when his father came into the house, whereupon he (Aaron) started to put it back into his pocket when the gun went off, and it seemed to him like "a bunch of fire and smoke and a crash and I didn't know anything." The appellant, Isaac Martin, testified that he leaned over the head of the bed to pick up the 32 Smith & Wesson, and, as he turned around to pick up the revolver, the automatic was pointed in his face by Aaron and went off, striking him in the middle of the chin, that he immediately lost consciousness and did not know anything further until his mother shook him, standing by the door; the younger brother, Vearle Martin, was in the room just prior to the shooting and had turned away and did not see the shots fired. There is no testimony regarding the whereabouts of the mother of appellant at the time of the shooting. Shortly thereafter, the appellant, Isaac Martin, went out into the yard to crank his Ford car to come to town, and Aaron Martin came out and, in response to a question by his father, replied that he had a broken arm, walked around the other side of the car into a gate post, and fell to the ground. According to appellant's testimony, Aaron was placed in the car by appellant and the younger son, and the mother of appellant also got into the car, the appellant driving to C. W. Walker's place, about 3 or 3½ miles from the Martin place, Walker getting into the car at that point to go to town with them. The appellant drove approximately 3 or 4 miles further on until they had passed the gates, explaining to Walker that the steering wheel held him up or supported him and he was unable to get out and open the

gate. After passing the second or last gate, the appellant turned over the wheel to Walker and he (Walker) drove the balance of the way to town, coming to Dr. Brassell's office, where the wounds of both appellant and Aaron were examined and treated by Dr. Brassel and Dr. Brown. The state and the defendant introduced and offered expert medical testimony.

The defense interposed by the defendant was that he was unconscious or insane at the time he committed the act charged in the indictment.

[1] Appellant relies for reversal upon five propositions. The first is that the judgment and sentence appears to be void and in excess of the jurisdiction of the court. This is based upon the claim that, under section 1481, a particular kind of assault with intent to murder is described, to wit, assault with intent to murder, under the circumstances and in the manner provided by section 1476 (Code 1915), and that this kind of an assault with intent to murder carries a greater degree of punishment than an assault with intent to commit murder, under section 1480. Appellant claims that it is apparent that the prosecution was under section 1480, because there is no mention in the indictment of the character of wounds inflicted upon Aaron Martin, or, in other words, that there is no description of the character of the acts constituting assault with intent to commit murder "in any of the ways mentioned in section 1476." We think that the appellant has misunderstood the purpose of section 1481. That section refers to two crimes—the first clause of the section refers to assault with intent to murder, and the subsequent clauses, refer to assault with intent to commit mayhem, which crime is defined in section 1476. Section 1476 is substantially the same as section 712 of the Compiled Laws of 1884, and section 1481 is the same, with exception of the punishment which has been changed by amendment, as section 713, C. L. 1884. In the case of Territory v. Vigil, 8 N. M. 583, 45 P. 1117, decided in 1896, the territorial Supreme Court, construing those

sections, in a case wherein the defendant was charged and tried for assault with intent to murder, said:

"The indictment is framed under the first clause of section 713 of the Compiled Laws of New Mexico and is an indictment for an assault with intent to murder. It being an indictment for an assault with intent to murder, framed under the first clause of this section 713, it was not necessary to allege in the indictment that it was the intent to kill and murder in any of the ways mentioned in section 712, for the indictment is not an indictment for an assault with intent to maim or disfigure, etc., as mentioned in section 712, but is simply an indictment for an assault with intent to murder."

We think the foregoing is the proper construction. There is a reason for defining the crime of assault with intent to maim or disfigure or injure a person in any of the ways mentioned in section 1476, because the nature of the injury is an important element of mayhem, this crime, at the common law, being the unlawfully and violently depriving of another of the use of such of his members as may render him less able, in fighting, either to defend himself or annoy his adversary. Whereas, if the intent were to murder, the manner of consummating the intent would not be important, provided it were of a character which might result in murder if the acts involved had not stopped short of their full effect. The resulting battery is not a necessary constituent element of the offense of assault with intent to murder. See State v. Martinez, 30 N. M. 178, 230 P. 379. Section 1480 is the section which provides for punishment for assaults with intent to commit certain crimes, where the punishment for such offenses is not prescribed in the article containing that section. See State v. Ballamah, 28 N. M. 212, 210 P. 391, 26 A. L. R. 769, where, also, it was contended that the sentence was excessive, and the court said:

"But section 1485, Code 1915, which creates the offense, governs the punishment, and not section 1480, Code 1915."

The appellant has, perhaps, been confused by the arrangement of the various sections by the compilers of the Code. The position of the sections in the original act and a consideration of the purposes of section 1480

will clear the matter up. Chapter 3 of the Laws of the Territory of New Mexico, Fourth Legislative Session 1853, p. 86, was entitled: "Of offenses against lives and persons." It covered homicide in various degrees, duelling, mayhem, assault while committing a robbery, assault with dangerous weapon with intent to rob, robbery by force and violence without being armed with a dangerous weapon, written and verbal threats of violence to persons and property, ravishment of female by force, attempt to ravish, and various kinds of violent assaults. Section 26 of said act, which corresponds to section 1481, prior to amendment, read as follows:

"If any person shall assault another, with intent to murder, or to maim or to disfigure, or injure his person, in any of the ways mentioned in the next preceding section, he shall be punished by imprisonment in the county jail or territorial prison not more than five years, nor less than one year, or by fine not exceeding one thousand dollars nor less than fifty dollars."

Section 27, which does not seem to have been carried forward into the Code, provided that:

"If any person shall attempt to commit the crime of murder, by poisoning, drowning, or strangling another person, or by any means, not constituting an assault with intent to murder, such offender shall be punished by imprisonment in the county jail or territorial prison, not more than ten years, nor less than one year."

We do not find that there was any section specifically providing for punishment for assault with intent to commit burglary. Section 25, which is substantially the same as section 1476 of the Code, defined the crime of mayhem. Section 28 (Code, § 1491) provided for punishment for robbery. Section 29 (Code, § 1483) provided for punishment for assault with intent to rob while armed with a dangerous weapon. Section 30 (Code, § 1492) provided for punishment for robbery by force and violence, the robber not being armed with a dangerous weapon. Section 31 (Code, § 1484) provided for punishment for assault with force and violence with intent to rob, where the robber is not armed with a dangerous weapon. Section 33 provided punishment for ravishment of a female of the age of 10 years

or more, by force. This section has apparently gone
through the process of a number of amendments until
it reached the Code as section 1493, which was repealed
by the Laws of 1915, and chapter 51 enacted in lieu
thereof, which was subsequently amended. Section 34
(Code, § 1495) covered carnal knowledge of female
child under age of 10 years. Section 35 (Code, § 1485)
covered assault with intent to commit rape. Section 36
(Code, § 1482) covered assault with intent to kill or
injure any person by mingling poison with food, drink,
or medicine. Then came section 37, which is the last
section in the chapter and which is an omnibus section,
intended to provide the punishment for assaults to com-
mit any of the crimes mentioned in said section and also
assaults with intent to commit any other crime amount-
ing to a felony. Said section is as follows:

"If any person shall assault another, with intent to com-
mit any burglary, robbery, rape, murder, mayhem, or any
felony, the punishment of which assault is not herein
prescribed, he shall be punished by imprisonment in the
territorial prison or county jail, not more than three years,
nor less than six months, or by fine not exceeding one
thousand dollars nor less than one hundred dollars."

As before seen, burglary had not been specifically
provided for and therefore would fall within the pun-
ishment prescribed by this section. Different kinds and
grades of robbery had been defined, but it is doubtful
if all assaults with intent to rob had been covered. May-
hem had been defined, but the assault with intent to
commit mayhem was not covered otherwise than in sec-
tion 37. The punishment for assault with intent to
commit murder was provided for in section 26 (Code, §
1481). The punishment for assault with intent to com-
mit murder by poisoning, drowning, or strangling was
provided for in section 27 (not in Code) and was more
severe than that provided for in section 26. Section
36 (Code, § 1482) provided for still another punishment
for attempt to murder by mingling poison with any
food, drink, or medicine, and the punishment in this
section was still more severe than that provided for in
either of the other two sections. So, it is apparent that

the purpose of section 37 (Code, § 1480), being, as it was, the last section in the chapter, from its language and position, was intended to provide for the punishment for assaults with intent to commit offenses not otherwise provided for in that chapter.

[2] The foregoing is also an answer to the contention that section 1481 of the Code is void for indefiniteness because of the reference to a section of some statutes not named. The reference to section 1476, having no application to the offense of assault with intent to murder, is not involved in this case.

[3] The second point urged is:

"The trial court erred in denying the motion of defendant for permission to exercise a peremptory challenge upon petit juror, C. S. Melton."

The motion reads as follows:

"Mr. Kelton (in the absence of the jury). The defendant moves for permission to exercise a peremptory challenge upon the names of C. S. Melton and M. P. Carr, said motion being made before the jury is completed, for the reason that information has reached counsel from a reliable source since passing on said jurors that, if known to counsel at the time he passed said jurors, he would then have challenged them. From said information, counsel for the defendant are satisfied that the said jurors will not render a fair and impartial verdict in this case."

The district attorney objected that there were no efficient grounds for the motion set forth. The court ruled:

"The motion made by the defendant fails to disclose what information they have received relative to the jurors sought to be peremptorily challenged. For that reason, the court cannot determine in what connection the jurors are any less disqualified at this time than they were at the time they were accepted by both the defendant and the state. For these reasons, and for the further reason, as far as their voir dire examination is concerned, they appear to be qualified in every way, the motion will be overruled."

The Juror Carr was withdrawn by consent. In 35 C. J. "Juries," § 481, discussing peremptory challenges after acceptance, it is declared:

"In many states, the absolute right of peremptory chal-

lenge is allowed at any time before the juror is sworn, even if there has been an acceptance by the party challenging, or by both parties.   In other states, the absolute right of peremptory challenge after acceptance is not allowed, but the court, in its discretion, may allow the right to be exercised in such case."

The New Mexico court is classified by the author as holding with the latter view, citing State v. Leatherwood, 26 N. M. 506, 194 P. 600. We agree with the author that such is the holding of that case.

Of course, a challenge allowable in the discretion of the court is not strictly peremptory. It requires some showing to invoke discretion. It might therefore be said that the acceptance of a juror puts an end to the right to challenge him peremptorily. Thereafter, in the interest of a fair trial, the discretion of the court may be moved to allow a challenge chargeable to a party as one of his peremptory challenges.

It is assumed by counsel for appellant that the mere statement of counsel that new information had been received which convinced them that the juror would not render a fair and impartial verdict was sufficient to entitle them to the requested challenge. That is, of course, upon the theory that the only showing necessary to restore to appellant the right to challenge the juror peremptorily, in the strict sense, was such as would satisfy the trial judge that counsel had been misled when originally accepting him. The authorities in those jurisdictions, which reject the rule that the right continues absolute until the panel is sworn, indicate that such a showing does not necessarily move the court's discretion, and there are a number of decisions holding that the court may require further showing of the reasons upon which counsel claim that the juror is prejudiced or otherwise unacceptable, and also of the facts and circumstances which caused the party moving to believe that an accepted juror is not acceptable. That, we think, is the correct rule. Appellant, having had his opportunity to challenge, need not be allowed thereafter to interfere with and set aside the orderly procedure of the trial, as prescribed by the statute,

from mere caprice or for frivolous reasons. His right to challenge is then limited and restrained by discretion. In addition to the cases cited in 35 C. J. "Juries," § 481, quoted supra, see Comeford v. Morwood, 34 N. D. 276, 158 N. W. 258; Drake v. State, 5 Tex. App. 649; Jones v. State, 166 Ark. 290, 265 S. W. 974.

What showing should move the court to grant the challenge need not be determined now. It is evident, under the rule, that there was no abuse of discretion in this case.

[4] Appellant's third point is:

"The trial court erred in permitting, over the objections of the defendant, the introduction of certain incompetent, irrevalent, and immaterial evidence, injurious to the defendant."

One question objected to, which was asked of the witness Vearle Martin, was as follows:

"Q. Did you point out to the sheriff where Aaron was standing at the time he was shot, or at the time of the shooting?"

This was objected to for the reason that it had not been shown that the witness was in the house and knew the position of the parties at the time. It is now urged that the evidence was inadmissable because it called for a conversation between third parties in the absence of the defendant. This objection, not having been urged in the trial court, is not available for consideration here. The admission of evidence cannot be challenged on appeal for reasons not stated in the trial court at the time the objection was made. See Cook v. State, 191 Ind. 412, 133 N. E. 137.

"It is well settled that this court can only consider objections made to the evidence at the time the ruling was made." Harris v. State, 156 Ga. 582, 119 S. E. 519.

[5] The other testimony elicited by the state from the witness Vearle Martin related to statements which the witness had theretofore made to the district attorney, concerning the whereabouts of one of the pistols

immediately prior to the shooting, which was inconsistent with the testimony given by the witness on the trial. The objection was that the district attorney was trying to impeach his own witness. The district attorney protested that the questions were only for the purpose of refreshing the memory of the witness. It being admitted by the defendant that he had picked up the gun and had turned to take it outside to the car, and, at the time he turned, saw another gun in his face and a flash and crash and noise, and did not know anything afterward until the shooting was all over, and it being apparently established that Aaron Martin was wounded by four distinct bullet wounds, such wounds being caused by bullets discharged from the pistol then and there held by the appellant, there being no self-defense claimed, and the only defense being made was that the defendant was unconscious during the time of the shooting by him, we are unable to see how the questions or answers, which involved principally the position of the gun on the bed and whether the gun was in a scabbard or not, were prejudicial. It is the questioning of the witness on this subject which the appellant objected to and now urges as error. The later questions of the district attorney concerning whether the witness had previously stated that his father was going to whip him and Aaron were not objected to. Also, it may be observed that, under section 2180, Code 1915, as construed in State v. Hite, 24 N. M. 26, 27, 172 P. 419, the court has a large discretion under such circumstances.

[6] Dr. Lancaster, a practicing physician engaged in medical practice for twenty years, with army experience in the late war as physician and surgeon, testified, in answer to a hypothetical question propounded by the district attorney, that, in his opinion, a man wounded by the bullet from a 32 automatic at close range, the ball entering about the center of the chin, coming out at the angle of the jawbone, would know what he was doing if he stood and shot four or five shots from a gun like the Smith & Wesson revolver. The witness gave thereafter a narrative of two cases

within his experience in the late war and otherwise,
where a part of the jawbone was taken off by a high-
powered gun or otherwise and the persons receiving
the wounds, in both instances, remained conscious.
There is nothing in the record to indicate that the wit-
ness based his opinion evidence entirely or principally
upon these instances. On cross-examination, it de-
veloped that, in neither case, had the witness seen the
injuries at the instant they were inflicted. In one in-
stance, he got the history of the injury from the patient,
and in the other he based his statement on what
"others" told him, it not appearing whether the in-
jured man was one of the "others." Defendant's coun-
sel moved that the testimony as to these men remaining
conscious be stricken for the reason that the informa-
tion of the witness was based on hearsay. This was
refused by the court, and the refusal is urged as error.
In view of the fact that the witness had previously ex-
pressed his opinion, based upon his knowledge and
experience generally, that a man so wounded would re-
main conscious while immediately thereafter standing
and firing four or five shots, and in view of the law
that a medical witness may be permitted to base his
opinion, in part, upon the clinical history of a case
given him by his patient, we do not think the court
committed error in refusing to strike the testimony
complained of.

[7] Appellant next complains that the trial court
erred to the prejudice of the defendant in sustaining
the objection of the district attorney to the introduc-
tion of certain relevant, competent, and material testi-
mony sought to be introduced and elicited during the
trial by the defendant in the matter of cross-exam-
ination of witnesses for the state.

(a) On the direct examination by the district attor-
ney of the witness Walker, the witness was asked:

"Q. Upon leaving your place, who drove the car coming
to town?"

The following then occurred:

"A. I can explain that in this way. As I went to get in the car I asked Ike, seeing the condition he was in, to get on the other side and let me drive it, and he said 'no,' that the steering wheel kind of supported him, in an indistinct way, and I cannot get out and open the gates; there was two gates, one about a mile from my house and another one possibly 2½ or 3 miles this way. He says, 'I can't open the gates, and I will drive on until we get through the gates and then you can drive.'

"Q. State whether or not he did drive. A. Yes, sir."

The district attorney claimed that the answer was explanatory and not responsive to his question and, when defendant's counsel, on cross-examination, propounded the following question:

"Q. You spoke of the condition Ike was in, and the statement that the wheel would brace him some and that he was not able to get out and open the gates. Describe to the jury the condition he was in."

—objected to it on the ground that it did not constitute proper cross-examination. Appellant says that the state could not "receive the benefit of an incompetent, irresponsive, prejudicial answer and then estop the defendant from cross-examining as to the facts and circumstances brought out." The answer referred to appears not to have been responsive to the question, and defendant did not object to it or move to strike it out. It did not seem so patently prejudicial as to require the district attorney to ask for its withdrawal. Appellant cites, as supporting his contention, 40 Cyc. § 2496, note 47, to the effect that:

"One who has brought out improper testimony on the examination in chief of his witness cannot complain of the cross-examination of the witness on the same subject."

The cases cited indicate that the witnesses were examined touching the matters to which they testified—they do not deal with voluntary statements made by the witness. We do not consider the authories cited in point.

(b) In the examination of Aaron Martin, the following question was asked, on cross-examination:

"Q. As you were going out of the gate, passing outside

the gate as you have just stated, did you hear any one say anything?"

It was objected to for the reason that it was immaterial and incompetent as to anything said after the occurrence, and because it was not proper cross-examination. Another question was:

"Q. What did your father say to you when he called to you?"

Objected to on the same grounds as the previous question. The ruling of the trial court indicates that the objections were sustained on the ground that the questions did not constitute proper cross-examination. We think the court was correct in this ruling. It is urged, however, by appellant that the testimony would have been proper as a part of the res gestae. There is much conflict and confusion in the cases as to the rules governing the admissibility of statements as a part of the res gestae, and, aside from the question of the admissibility of the testimony on cross-examination, it is not apparent how the trial court could determine whether the answers, if given, would come within the rules pertaining to statements claimed to be a part of the res gestae. It is not shown what the witness would have said in response to the questions. Therefore prejudicial effect of the refusal to allow counsel to propound the questions is not apparent. See Baldwin v. State, 119 Ark. 518, 178 S. W. 409. That the question was asked on cross-examination makes no difference, in this case.

"While the right of cross-examination, thorough and sifting, should not be abridged, nevertheless, even upon cross-examination, where an answer to a question propounded to a witness is refused by the court, and such refusal is assigned as error, it must appear that counsel, on the trial, stated to the court, either what he expected to prove, or (if that is impracticable or impossible) what he desired to prove, by the answer to such rejected question. Upon failure of such statement to the trial court, this court cannot review the alleged error." Jackson v. State, 1 Ga. App. 723, 58 S. E. 272 (syllabus 2).

(c)  In an examination of the same witness, on cross-

examination, the defendant propounded the following question:

"Q. Well, if he (referring to the defendant) was mad at you, did you or not know it?"

The district attorney objected for the reason that it called for a conclusion of the witness, stating that the witness could testify as to what he saw or took place, but not as to what was in the mind or heart of any one else. Immediately prior to this, the following question and answer appears in the record:

"Q. On this morning after breakfast as you have testified to, was there any words or difficulty of any kind between you and your father on that morning? A. No, sir."

We find no error in the ruling of the court sustaining the objection.

(d)   In the examination of Dr. A. F. Brown, a witness introduced on behalf of defendant, the defendant propounded the following question:

"Q. If the shot that caused the wound (referring to the wound upon the jaw of the defendant, Isaac Martin) was fired at a close range from a 32 automatic—was fired at close range and the impact of the bullet on the jaw or chin as described by you—what effect would that have had on Martin as to shock or otherwise?"

The district attorney objected for the reason that it was immaterial and incompetent at that time, and that it was not admissible for any purpose at that stage of the trial. Later, and after the defendant had testified, the same Dr. Brown was recalled as a witness for the defendant. After repeated questions sought to elicit an expert opinion from the witness as to the effect of a wound such as the defendant was said to have received, some of which questions were excluded, the following questions were asked and objection overruled:

"Q. In the experience that you have had that you have detailed to the jury, and the wound that you have described, taking it altogether, in your opinion, do you know the probable effect of that kind of a wound on a person?

A. No, sir; I don't know what effect it would have—
no; I could not say.

"Q. You don't know the probable efect on any person?
A. It would depend upon the temperament, his nervous
temperament.

"Q. What effect would it have on a person of the ordi-
nary or usual temperament?   A.   I am not expert enough
to answer that, I don't believe.   I couldn't say."

In view of the answers of the witness, we are unable
to see how the refusal to permit him to express an
opinion concerning the same matter at an earlier stage
of the trial would be prejudicial to the defendant.

(e)   In the examination of the defendant, the fol-
lowing question was asked by his counsel:

"Q.   Is there any mark under your jaw there that was
caused on account of that bullet?"

The district attorney objected as follows:

"Objected to for the reason that any mark would not
be admissable; in fact, the question of the demonstration
is not admissible.   It was excluded from the jury from
other witnesses by objection of counsel for the defense,
and this does not go to explain anything to the jury.

"The Court:   Objections sustained.   You can prove about
the wound, but I sustain the objection as to the demon-
stration of the defendant."

It is not clear how the question called for an exhibi-
tion of the wound to the jury, but apparently it was
such exhibition that was objected to and excluded. In
view of the fact that the record shows that the wound
was fully described by the witnesses we fail to see how
an exhibition of it five months after it was received
would enlighten the jury substantially or how its exclu-
sion was prejudicial.

(f)   In the examination of Dr. W. M. Lancaster, a
witness on behalf of the state, on rebuttal, the district
attorney asked the following question:

"Q.   From the experience that you have had as a general
practioner, in addition to the other experience you have
related, you may state if, in your opinion, that a man was
wounded by the bullet from a 32 automatic at close range,
the ball entering about the center of the chin, coming out
at the angle of the jawbone, whether or not he would

know, (the party so wounded), what he was doing if he stood and shot a gun like this revolver four or five shots."

This was objected to by the attorney for defendant for the reason that the witness had not stated that from the experience that he had had, he would know the probable effect of such wound. The court overruled the objection. The witness answered:

"A.    He would "

Immediately prior to giving this testimony, the witness had stated that he had observed and had experience with the effect that the shot produces upon the mentality of a wounded man. Appellant says, in his brief, that he sees no objection to the question, but that the answers should not have been received, because, as he claims, the court had excluded similar testimony offered by defendant to be elicited from Dr. Brassell, a witness on behalf of defendant. It is to be noted from the testimony, however, that Dr. Brassell was not able to testify as to the probable effect of the injury to the defendant, as appears by the following questions and answers:

"Q.    Dr. Brassell, you think you would know the probable effect of such a shot on a person?    A.    In my opinion, they might vary.

"Q.    And would vary as to the temperament of the person, would they not, Doctor?

"District Attorney:    Objected to for the reason that it is leading and suggestive.

"The Court:    Objection overruled.

"A.    Yes, sir.

"Q.    Then the average or ordinary person, do you think you would know the effect that would have on the ordinary or average person, the probable effect; I think you can answer that question yes or no; that is, if you think you would know the probable effect on the average or ordinary person of such a wound as you have described?    A.    Judge, I had considerable—

"The Court:    Answer if you can, yes or no.    He is asking if you know the probable effect.

"A.    No."

We see no error in the court's admitting the testimony of Dr. Lancaster complained of.

[8] Defendant complains of remarks made by the district attorney, in the course of his argument, as follows:

"It is the first time I ever saw a witness come into a courtroom and be sworn, and then not go on the stand and corroborate the testimony of the defendant, and yet the record shows that she was on the scene, * * * and I will tell you why the state of New Mexico did not call her. It was because the state of New Mexico was up against the same adversity with her, * * * as with the two little boys. The testimony of Aaron Martin was to the effect, * * * but Aaron Martin told you where he had been making his home prior and subsequent to the time he received those wounds, with the exception of the time he was in the hospital or under the treatment of a doctor. Is it not natural, then, to presume why the state of New Mexico did not go and get any more witnesses than would be necessary to prove the allegations in the indictment?"

These remarks had reference to the defendant's mother who was sworn as a witness in this case and put under the rule and was in attendance upon the trial as such witness, but who was not called to testify by either the state or the defense.

Defendant argues that it was prejudicial error for the court to refuse to restrain the district attorney and admonish the jury that they were not to consider such argument. He cites 2 R. C. L. 429, as follows:

"The authorities are not in accord as to the propriety of comment on the failure of a defendant in a criminal prosecution to call certain witnesses in his behalf. It has been declared that, in exercising the right of summing up evidence, it is not proper for counsel for the prosecution to comment on the absence of witnesses for the defense. This rule is especially strong where the witnesses are equally available to both parties."

The author cites Bennett v. State, 86 Ga. 401, 12 S. E. 806, 12 L. R. A. 449, 22 Am. St. Rep. 465, and note, in support of the text. The basis of the decision in that case was the proposition that the character of a party accused of crime is presumed to be good until the contrary is proved, and that it was not proper to allow

counsel for the prosecution to argue against objection that want of testimony as to the character of the accused authorizes the jury to infer that his character was bad. While the authorities are in conflict, the general rule seems to be that it is not allowable for the prosecuting attorney to refer in his argument to the defendant's failure to produce evidence of his character, since he is presumed to have a good character. It is so stated in the note to Brown v. State (98 Miss. 786, 54 So. 305) 34 L. R. A. (N. S.) p. 811, another case cited in support of the above text and also relied upon by appellant. The foregoing statement by the note writer is in contrast, however, to the further statement in the same note to the effect that it is generally held that it is not, ordinarily, error for the prosecuting attorney to comment upon the failure of the defendant to produce witnesses to testify. The note cites a large number of cases in support of this latter statement, one illustration being as follows:

"The court, in McGuire v. State, 2 Ohio C. D. 318, said: 'The question thus presented is this: Whether in a criminal case, where it appears that at the time of the alleged commission of the criminal act, a person jointly charged therewith was present, and might have been called by the defendant as a witness, and was not, this is a circumstance which may be referred to in argument or be considered by the jury. On this point the authorities differ. We think the rule as stated in Abbott's Trial Brief, 152, is reasonable and correct; viz., "The mere omission to call a competent and available witness who has some knowledge of the transactions, which, if the claim of the party omitting is correct, would be favorable, and who is not adversely interested or biased, is a circumstance which the jury may consider." See cases there cited. If this be so, it would seem, also, to be a legitimate subject of argument to the jury. Of course, if both sides refuse to call such witness, it might fairly be urged by either of the parties, and the weight to be given to it would depend upon the circumstances of each particular case, and largely upon the position which the witness occupies to each of the parties; for, if adverse in interest to one of them, such party would hardly be expected to call such witness.''

It is worthy of note that the Georgia Supreme Court, discussing argument of counsel in a case not involving the character of the defendant, 15 years after the de-

cision in Bennett v. State, supra, in Morgan v. State, 124 Ga. 442, 52 S. E. 748, decided:

"The absence of a witness who is competent and cognizant of material and relevant facts is a proper subject of comment in the argument of counsel before the jury; and it is error for the court to give an instruction which entirely eliminates from the jury's deliberation the effect of such argument."

The court also remarked:

"In the argument of cases, counsel should be allowed considerable latitude of speech; and, so long as extraneous facts are not injected or improper language used, the trial judge should not interfere. The premises of the advocate should be founded upon some fact or group of facts brought to light upon the investigation; his conclusions, however absurd or illogical, goes to the jury as the result of his reasoning, and not as a statement of fact. The defendant's counsel insisted before the jury that the absence of the wounded man was a circumstance persuasive of the conclusion that, had he been present at the trial, he would have sustained the defendant's plea of self-defense. In anticipation of this argument, the solicitor had urged that no such inference could be drawn from the injured man's failure to appear to prosecute or testify. These conflicting deductions from the circumstance of his absence were peculiarly within the jury's domain and exclusively for their solution. 'It is customary to permit attorneys to comment upon the absence of witnesses, or their nonproduction, when they are shown to be cognizant of the facts in issue. It is a mere matter of argument and may be discussed by either side, trusting to the good sense of the jury to properly estimate the value of such arguments.' Chicago R. Co. v. Krayenbuhl [170 Neb. 766] 98 N. W. 44."

The attorneys for appellant have shown great zeal and industry in the briefs and arguments presented in behalf of appellant, but, from all the foregoing, it appears to us that there is no error in the record and that the judgment of the trial court must be affirmed, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.