[Crim. No. 673.   First Appellate District.—August 24, 1917.]

# THE PEOPLE, Respondent, v. WILLIAM EDGAR, Appellant.

CRIMINAL LAW—RAPE — MISCONDUCT OF DISTRICT ATTORNEY — ILLICIT RELATIONSHIP OF WITNESS WITH DEFENDANT.—In a prosecution for rape, it is misconduct for the district attorney to discredit a witness called by the defendant by persistently asking her questions for the purpose of showing that the witness herself had had improper relations with the accused, where such questions are asked in bad faith and, although the foundation for impeachment is laid, no evidence of impeachment is offered.

ID.—EVIDENCE—INSISTENCE OF SWEARING UPON CRUCIFIX.—An insistence by the district attorney that a witness should swear to the truth of her statements upon a crucifix pressed against her breast is flagrant misconduct.

ID.—PUNISHMENT OF DEFENDANT—INTIMATION UPON OBJECTION TO QUESTION.—The statement of the district attorney, upon the sustaining of an objection to a question asked the prosecuting witness as to her knowledge of what would happen if the defendant were convicted upon her testimony, that he knew what would happen if it were his daughter, is misconduct.

ID.—ARGUMENT TO JURY—OPINION OF GUILT.—The statement of the district attorney in his closing argument that certain persons, including the members of the grand jury and the deputy sheriffs, heard the story of the prosecuting witness and believed it, and that he himself was of the opinion that the defendant was guilty, is misconduct.

ID.—GOOD FAITH OF PROSECUTION—IMPROPER REMARK.—A remark by the district attorney that he would not prosecute a man if he did not believe him guilty, is misconduct.

ID.—INFLUENCE OF FRATERNAL ORDER AND POLITICS.—The statement of the district attorney that he would not let fraternal orders and politics affect his prosecution of the case, in the absence of evidence to support the intimation, is misconduct.

ID.—CHASTITY OF PROSECUTRIX—PROOF BY DEFENDANT.—The statement of the district attorney that if the defendant were not guilty he could and should have discovered and shown in evidence whether or not the prosecutrix had had sexual intercourse with other persons, is misconduct.

ID.—DISREGARD OF MISCONDUCT—REPEATED ADMONITIONS.—While it is ordinarily necessary to request the court to admonish the jury, where there is misconduct of counsel, such is not the case where the court tells the jury that it is not going to admonish them each time, but

that they should not consider anything to which an objection is sustained.

ID.—ADMONITION—WHEN INSUFFICIENT.—Where in a closely balanced case, misconduct is repeated and persisted in, despite the warnings and admonitions of the trial court, and is so pronounced and pernicious that it is not in human nature to forget or disregard its prejudicial effect, a mere admonition, or a number of admonitions, will not suffice to right the wrong done, and the only remedy remaining is to be found in a reversal of the judgment.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. W. A. Beasly, Judge.

The facts are stated in the opinion of the court.

H. A. Blanchard, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

THE COURT.—The defendant was charged with and convicted of the crime of rape alleged to have been committed upon a female under the age of consent. He was sentenced to twenty years' imprisonment in the penitentiary, and appeals from the judgment and from an order denying his motion for a new trial.

As is quite frequent in criminal cases appealed from the county of Santa Clara (from which this appeal comes), the misconduct of the district attorney during the trial of the cause is the principal point made for a reversal of the judgment. It seems to be a pronounced proclivity of the district attorney of that county to endeavor, in the trial of a person charged with crime, to circumvent the well-settled and generally well-understood rules of evidence by willfully injecting into the case immaterial and prejudicial matters, through the medium of innuendo, bald assertions of his personal opinion as to alleged facts, and the poor pretense of arguing objections, all obviously intended for the ears and consideration of the jury. In the past similar misconduct, which has been brought to our attention in other recent cases, did not result in a reversal of the judgment, not, however, because it was not abundantly established, but because the evidence in the given case sufficiently showed the defendant to be guilty,

and we were satisfied that the verdict of the jury had not been controlled or materially affected by such misconduct. The situation in the present case is obviously different. Here the testimony of the prosecuting witness was not only uncertain and contradictory in matters of vital importance, but was shown to be willfully and absolutely false in certain particulars affecting a material phase of her story. Moreover, her story in part runs close to the border line of the fantastic.

No good purpose would be served by narrating in detail her testimony; but for the purpose of showing its improbability in an essential feature it will suffice to say that she testified in substance that the defendant prior to the commission of the particular act for which he was on trial had had sexual intercourse with her at regular intervals during a period of several months, but that on each occasion there was but slight penetration, and she undertook to state with exactitude its extent; and also testified that on each occasion the defendant was content to lie passively upon her for a period of fifteen minutes without engaging in the motions which ordinarily accompany an act of sexual intercourse.

The improbability of the testimony of the prosecuting witness in the particular stated is obvious. It was so to Dr. Beaty, a witness for the prosecution, who, referring to it, said: "I can conceive of an entering carefully, very carefully, and being withdrawn without causing a rupture of the hymen. I think it is very unnatural, very unusual. It is not common to carry on acts of sexual intercourse as described by the prosecutrix. I have a reasonable doubt as to whether that would be probable, but not as to its being possible. It is a possibility but not a probability."

The defendant, testifying in his own behalf, denied the story of the prosecutrix; and a Mrs. Perry, a witness called by him, corroborated him in the particular that he did not and could not have committed the offense charged on the day and at the place and time charged. This witness testified in substance that she and her husband had been particular and intimate friends of the defendant and his wife, and had frequently visited them at their home, and that after the wife's death she, the witness, had been in the habit of visiting the defendant at his home for the purpose of gathering up and doing his laundry, and at one time after the death of his wife had attended him during an illness; that she was at the defend-

ant's home accompanied by her children on the day and during the hours that the prosecutrix testified the defendant had committed the act charged against him; that while there the prosecutrix called, but that the defendant told her to go home, and on that occasion at no time attempted and had no opportunity to commit any act of impropriety with her.

This witness was subjected to a very severe cross-examination by the district attorney. He was not satisfied to rest upon the results obtained by this examination, but resorted to what we must characterize as the grossest misconduct in a further effort to discredit her. His attitude and conduct will be best shown by excerpts from the record of the trial.

"Q. (By Mr. Free on Cross-examination:) You cannot say whether you went there [to the defendant's home] once or several times that week [the week in which the offense was charged]?

"A. I never went several times in one week when Mr. Edgar was not sick.

"Q. Oh, I see.

"A. When Mr. Edgar was sick my husband as a rule would go with me, and sometimes I went alone, and my husband was a frequent visitor and visited Mr. Edgar very often, and I went with my husband's consent.

"Q. Did your husband go there to visit Mr. Edgar or come to get you to bring you home?

"Mr. Blanchard (Counsel for the Defendant): Just a second. I object to that on the ground it is immaterial, irrelevant and incompetent, not proper cross-examination, and intended by the district attorney as an insult to this witness, and I assign the same as misconduct, and ask that the jury be instructed to disregard it.

"The Court: The objection is sustained. Gentlemen of the jury,—whenever the court sustains an objection to a question you are to disregard the question as well as the answer— there being no answer in this case.

"Q. Haven't you and your husband had frequent trouble about Mr. Edgar?

"Mr. Blanchard: That is objected to as immaterial, irrelevant and incompetent and not proper cross-examination, and intended by the district attorney as an insult to this witness, and I assign the same as misconduct of the district attorney, and I ask the court to instruct the district attorney to desist

from such misconduct, and I ask that the jury be instructed to disregard any statement of that character.

"Mr. Free: I want to answer that. This witness alleges that her conduct in this respect is agreeable to her husband, which is contrary to the fact, as we know, and the husband will so state; and I want the right to cross-examine her and lay the foundation for further testimony.

"Mr. Blanchard: I assign the statement of the district attorney as misconduct. I state that it is absolutely false, and the husband has visited Mr. Edgar frequently himself.

"Mr. Free: Will you consent to the husband being called and sworn and asked the questions?

"Mr. Blanchard: I will waive none of my rights so far as that is concerned. The fact of a defendant such as Mr. Edgar being indicted on a charge of rape, and then deny him the right to have a lady come to testify without branding her as being guilty of every crime than that one you allege this man is guilty of. This lady is the mother of five children, and one a baby in arms, a baby eighteen months old, yet she comes into court to be insulted by an officer whose duty it is to protect this woman, and I insist that we have a right to the protection of this court, and I demand that the district attorney of this county desist from insulting this witness time after time.

"The Court: Well, I don't think that further discussion is necessary. The court sustained the objection yesterday. The witness has volunteered the statement here that I presume the district attorney thought I invited this question. If he wishes to have that statement stricken out I will have it stricken out; and, gentlemen of the jury, counsel sometimes become heated, and the court usually tries to moderate their arguments as far as possible. These arguments and statements by the district attorney and the attorney for the defendant are not evidence, and you must not accept them as evidence in any way; and when the court sustains an objection to a question you must wipe the question from your mind as well as remember that the answer has not been given, or if it has been given and stricken out, that you must not regard it in any way. I will not repeat this instruction to you frequently. It may appear proper to do so and it may be asked, but I am depending upon you as intelligent men

to remember it and bear it in mind whenever such instances occur in the future.

"Mr. Free: Q. What did you mean when you testified that you got the bedding on Tuesday?

"A. I was there on Tuesday the 14th and the children went on Thursday. You get me complicated. I suppose that is your business to do so. You have attacked my character so terrible that you got me so over-wrought that I don't know what I am saying sometimes. I want you to understand that I am a good woman. . . .

"Q. Well, Mrs. Perry, I don't think you know any date that you were there, and I don't think that you know that you were there on the 14th.

"Mr. Blanchard: That is objected to, and I assign the same as misconduct. . . .

"Q. You and Mr. Edgar have been in the house alone for a considerable time on various occasions?

"A. Yes, sir.

"Q. And you and your husband have had some words about it?

"Mr. Blanchard: I object to that on the ground it is immaterial, irrelevant and incompetent, and I assign the question as misconduct.

"The Court: The objection is sustained.

"Q. You are living with your husband?

"A. Yes, sir.

"Q. Have you any other children [evidently referring to a child not previously mentioned]?

"A. Yes, sir.

"Q. What is his name?

"A. William.

"Q. William Edgar, isn't it?

"A. Not William Edgar. William Oliver.

"Mr. Blanchard: I assign the statement of the district attorney as an insult to the witness and as misconduct.

"Q. Isn't the child generally known about the community as William Edgar Perry?

"Mr. Blanchard: Just a moment. I object to that as irrelevant, incompetent, and immaterial, and intended by the district attorney as an insult to the witness, and I demand the protection of the court for this lady, and I assign the same as misconduct.

"The Court: The objection is sustained. It is incompetent, Mr. Free.

"Q. What did you say his name is?

"A. William Oliver.

"Q. And how old is it?

"A. 14 months old it will be the 25th of this month.

"Q. And after whom was it named?

"Mr. Blanchard: I object again to the question and I assign the same as misconduct.

"The Court: The objection is sustained."

The misconduct of the district attorney as shown above is apparent; and that it was deliberately pursued with the intent and purpose of prejudicing the jury against the witness and discrediting her testimony is equally apparent. It will be conceded that the district attorney was privileged to show, if he could, that the relationship existing between the witness and the defendant was of such a character that she would be likely to color her testimony to suit the needs of the defendant; and with that end in view he would have been justified in asking in good faith questions based upon fact, or what he honestly believed to be the fact, for the purpose of laying a foundation for the impeachment of the witness. Of course, in urging the question in the face of an objection he would have been justified in stating what he expected to prove by way of impeachment. But to state in the presence of the jury that it was a fact within his knowledge that the visits of the witness to the home of the defendant were not agreeable to her husband, and that the latter would so testify, was manifestly improper and injurious, both to the witness and the defendant. That the questions and statements objected to were not asked or made in good faith is evident from the fact that the district attorney did not call the husband of the witness for the purpose of impeachment, or any other purpose during the trial, even though he had laid the foundation for impeachment. That he was acting in bad faith, and in so doing was prompted by a desire to badger and discredit the witness is evidenced by his request made to counsel for the defendant to consent that the husband be called as a witness. Surely a man of the ability and extended experience of this particular district attorney in the trial of criminal cases must have known that it was not necessary for such consent to be had before the husband could be

called as a witness for the people; and there can be no escape from the conclusion that in making the request it was the purpose of the district attorney to draw an objection from counsel for the defendant, and thereby give the jury the impression that he could substantiate his statement of what he asserted to be the fact if counsel for the defendant would permit him to do so. In short, the district attorney by this device succeeded in placing before the jury his unsworn statement of a fact which was well calculated to prejudice the witness and the defendant in the eyes of the jury; for, as was said in the case of *People* v. *Fleming,* 166 Cal. 357, 380, [Ann. Cas. 1915B, 881, 136 Pac. 291, 301], "the plain effect of the statement was that the prosecution had such proofs but could not make them because the law of evidence prevented such course." The questions of the district attorney which by innuendo conveyed the impresssion that the witness' child, William, was the son of the defendant were wholly unwarranted by anything that had been previously testified to by the witness and were therefore improper cross-examination. Such a vile and, in so far as the record shows, unwarranted insinuation uttered by one so high in authority as the district attorney—whose sworn duty it is to protect witnesses from unnecessary insult—must have prejudiced the witness and the defendant in the eyes of the jury, for "the district attorney may well be assumed to be a man of fair standing before the jury, and they may well have thought that he would not have asked the question unless he could have proved what it insinuated." (*People* v. *Crosby,* 17 Cal. App. 524, [120 Pac. 441]; *People* v. *Tufts,* 167 Cal. 266, [139 Pac. 78].)

The district attorney's successful insistence that the witness should swear to the truth of her statements upon a crucifix pressed against her breast was another instance of the badgering to which the witness was subjected; and doubtless was intended as a direct intimation to the jury that she could not be believed while testifying under the ordinary form of oath. This was a flagrant piece of misconduct.

Another instance of misconduct is to be found in the cross-examination of the prosecutrix when, in making an objection to a question which called for the knowledge of the witness as to what would happen to the defendant if he were convicted upon her testimony, the district attorney, after stating

the usual grounds of objection, said "I know what would happen to him if it were my daughter." This statement was wholly unnecessary to the objection, and was plainly intended as an intimation to the jury that if the prosecutrix were his daughter he would kill the defendant because he believed him to be guilty; and the evident purpose of the statement was—and very likely had for its result—to inflame the minds of the jury against the defendant. (*State* v. *Robinson,* 170 Iowa, 267, [152 N. W. 595].)

In his closing argument to the jury the district attorney again resorted to culpable misconduct, which was duly protested by defendant's counsel without any resulting admonition from the court, the trial court evidently being of the opinion that any irregularities occurring during the course of the argument would be corrected by its final charge to the jury. Extracts of the argument complained of follow:

"Mr. Free: Gentlemen of the jury,—Professor Holland and Mr. Lake heard this girl's story and they believed it. They brought her before the grand jury. Nineteen men of this county acting upon their oaths as grand jurors heard her story, and believed it. I heard her story and I believed it. The deputy sheriffs heard her story and they believed it; and why shouldn't you believe it? . . .

"Another thing, gentlemen. If this condition had been caused by any person other than Edgar; if this little girl had been seen with any other man; if she had been in company with any boy, don't you suppose that they would have found it out with . . . detectives scouring the city? Don't you think that if this had been done by anybody else . . . they would have found it out and offered that proof? . . .

"I will not prosecute any man that I do not believe to be guilty for a thing of this kind; but you cannot put enough fraternal orders before me, you cannot put political inducements in my face to stop me, when the fate of a little girl is at stake. . . . "

No justification has been made of this argument and, in our opinion, none can be made. It was grossly improper, and undoubtedly must have weighed heavily against the defendant. The indictment of the defendant was not any evidence of his guilt; and the personal belief in the guilt of the defendant entertained by the grand jurors, the district attorney or the persons mentioned in the argument, nor the tes-

timonial of the district attorney to his own integrity, had any proper place in the case, and should not have been presented for the consideration of the jury; for obviously such belief might have been based upon matters and things which were not before the jury in the form of legal evidence. The injection into the case of the district attorney's opinion, and the opinion of others as to the guilt of the defendant, in all likelihood must have weighed with the jury. (*State* v. *Baker,* 246 Mo. 357, [152 S. W. 52] ; *Nixon* v. *State,* 14 Ga. App. 261, [80 S. E. 513] ; *Moore* v. *State,* 10 Ga. App. 805, [74 S. E. 318] ; *People* v. *Dane,* 59 Mich. 550, [26 N. W. 781] ; *Commonwealth* v. *Shoemaker,* 240 Pa. St. 255, [87 Atl. 685].)

When the district attorney declared that he would not prosecute any man he did not believe to be guilty he thereby wrongfully placed his personal opinion of the guilt of the defendant in evidence in the case. He was privileged to argue to the jury that it was his opinion formed from deductions made from the evidence adduced at the trial that the defendant was guilty of the crime charged (*People* v. *Rogers,* 163 Cal. 476, [126 Pac. 143]) ; but his declaration to the jury that he would not prosecute any man whom he did not believe to be guilty was tantamount to an assertion that he believed in the guilt of the defendant at the very inception of the prosecution; and necessarily such belief must have been founded upon the result of the district attorney's original and independent investigation of the charge, and therefore in all likelihood was based, in part at least, upon facts which did not appear and which perhaps could not have been shown in evidence.

In the case of *State* v. *Gunderson,* 26 N. D. 294, [Ann. Cas. 1916A, 429, 144 N. W. 659], the defendant was convicted of the crime of rape upon the uncorroborated testimony of a fifteen year old girl, which the supreme court of North Dakota characterized as "inconsistent and vacillating and in many instances opposed to all human probabilities." In that case counsel for the state in his closing argument to the jury said, "I do not come here to try a case unless the defendant is guilty." This remark was held under all the circumstances of the case to be misconduct of so grievous a character as to necessitate a reversal of the judgment, for, as stated in the opinion, "No one who is at all conversant with jury trials can fail to see the possible prejudice of this remark. The

scales were hanging in the balance. On one side is the positive denial of the defendant; on the other is the practically uncorroborated testimony of the complaining witness, that testimony being more or less contradictory and inconclusive. In such a juncture the state's attorney himself testifies and seeks to force into the issue his own personality and his own standing and influence. . . . '' It is universally held that such remarks are not only a breach of professional propriety and professional ethics, but constitute legal error.

We have searched the record in vain for any evidence to support the intimation of the district attorney, made in his argument, to the effect that the influence of fraternal orders and politics had been brought to bear on him to prevent the prosecution of the defendant. Such an argument therefore was entirely without the record, and ought not to have been indulged in. That it was intended to be and was in a measure prejudicial to the defendant we have no doubt.

The district attorney placed a burden of proof upon the defendant greater than the law demands when, in his argument, he in effect told the jury that if the defendant were not guilty he could and should have discovered and shown in evidence whether or not the prosecutrix had had sexual intercourse with other persons. This argument was clearly improper and well calculated to mislead the jury. Obviously the motive of this argument was to impress the jury with the belief that if the defendant was not guilty it was incumbent upon him to show in evidence who the guilty party was; and the district attorney must have known as a matter of law that the defendant, in order to secure an acquittal, was not burdened with any such duty. (*Morris* v. *State*, 9 Okl. Cr. 241, [131 Pac. 734] ; *Brown* v. *State*, 98 Miss. 786, [34 L. R. A. (N. S.) 815, 54 South. 305].)

It is contended upon behalf of the people that while counsel for the defendant repeatedly protested the misconduct complained of, nevertheless he did not in any instance request the trial court to admonish the jury not to be influenced by the same, and that therefore the defendant will not now be heard to complain.

Ordinarily, it is true, an assignment of misconduct will not be considered upon an appeal in the absence of a showing that it was protested in the court below, coupled with a request that the court remove, if possible, the evil effects thereof

by a proper admonition to the jury. It is also true that no such request was made in this case with every assignment of misconduct; but it must be remembered, as shown by the excerpt from the record hereinbefore quoted that the first assignment of misconduct was accompanied with a request that the jury be admonished not to be influenced thereby; and whether or not this particular assignment was well taken the fact remains that the trial court sustained an objection to the question which it was claimed constituted misconduct, and at the same time charged the jury that whenever an objection was sustained they were to disregard the question as well as the answer; and later when another assignment of misconduct was made, but which was not accompanied by a request for an admonition to the jury, the trial court, to its credit, of its own motion interposed with an admonition, and, as if anticipating what was to come, again told the jury that the sustaining of an objection to a question would suffice to warn them not to be influenced by the question or the answer; and that while it might appear proper to do so still no other or more explicit admonition would be frequently given.

Clearly, in view of the trial court's announcement, it was not incumbent upon counsel for the defendant to thereafter request an admonition to the jury when making an assignment of misconduct. Moreover, the learned trial judge, in an endeavor to safeguard the rights of the defendant against unfair attack, and apparently appreciating the gravity of the repeated misconduct of the district attorney, was not content, as he first intimated, to have a mere ruling sustaining an objection as an admonition to the jury; for the record shows that he at times, of his own motion, reprimanded the district attorney and admonished the jury not to be influenced by certain misconduct.

Such reprimands, however, apparently did not avail to deter the district attorney from the commission of subsequent acts of misconduct, which were so pronounced and persistent as to run close to the border line of contempt. And that this is so is evident by the fact that a particular piece of misconduct, occurring just as the trial was drawing to a close, and one which we have not heretofore mentioned, provoked the trial court to say: "Now, Mr. Free, one more transgres-

sion such as this one will merit a severe penalty from the court.''

Thus, it will be seen that the paramount point presented here does not involve a waiver of the misconduct complained of by failure to request that its evil effect be offset by an admonition to the jury, but rather presents the question of whether or not the admonitions actually given suffice to remove the prejudice engendered by the misconduct.

While it is the general rule that if it can fairly be said, from all of the circumstances of the case considered in conjunction with the nature and extent of the assigned misconduct, that an admonition of the court had the desired effect, there can be no just cause for complaint, nevertheless it is a recognized exception to that rule that, where as here, in a closely balanced criminal case, misconduct is repeated and persisted in, despite the warnings and admonitions of the trial court, and is so pronounced and pernicious that it is not in human nature to forget or disregard its prejudicial effect, then manifestly a mere admonition or any number of admonitions will not suffice to right the wrong done, and the only remedy remaining is to be found in a reversal of the judgment.

The judgment is reversed and the cause remanded for a new trial.