[Crim. No. 1950.   Second Appellate District, Division Two.—October 3, 1930.]

THE PEOPLE, Respondent, v. MACEO B. SHEFFIELD, Appellant.

Thomas P. White and Martin J. Burke for Appellant.

U. S. Webb, Attorney-General, James S. Howie, Deputy Attorney-General, for Respondent.

SCHMIDT, J., *pro tem.*—Appellant Maceo B. Sheffield by indictment returned by the grand jury of Los Angeles County was charged jointly with Roscoe C. Washington and Richmond Dunn on twelve counts of bribery and twelve counts of extortion, it being alleged that appellant with his co-defendants, while acting as police officers of the city of Los Angeles, accepted money and property from different underworld characters and bootleggers pursuant to an agree-

ment upon the part of appellant and his co-defendants that they, in return for the payment of said money and property, would not arrest or prosecute the bootleggers named in the indictment for violation of what is commonly known as the Wright Act.   (Stats. 1921, p. 79.)

On the opening day of trial the district attorney moved to dismiss all twelve counts involving extortion and all counts except 13, 15, 17, 19, 21 and 23, charging bribery, in relation to the alleged bribe givers, Mr. and Mrs. Hendricks.   Defendants Washington and Dunn were acquitted on all counts.   Appellant was acquitted on counts 15, 17, 19 and 21 and was convicted of the crime of bribery as charged in counts 13 and 23.   Appellant moved for a new trial, which was denied, and he was sentenced to San Quentin for the period prescribed by law.   From the judgment and order denying his motion for a new trial the defendant Sheffield prosecutes this appeal.

I.   Appellant claims the trial court erred in its rulings during the progress of the trial and in the giving and refusing to give certain instructions.

(a) In five separate instructions the court instructed the jury fully and elaborately on the law of conspiracy, showing clearly, however, that these instructions were given upon the theory of a conspiracy existing between the defendants, as illustrated by one of the instructions: "If you believe from the evidence that the defendants . . . or any two of them, pursued by their acts the same object . . . the jury will be justified in the conclusion that such defendants so pursuing the same object were engaged in a conspiracy to effect that object."   The charge against appellant and his two co-defendants was that of agreeing to receive and receiving a bribe, which charge necessarily includes within the substantive offense the elements of a conspiracy; and had the trial been had upon this theory the instructions would have been proper.   (*People* v. *Keyes,* 103 Cal. App. 624, 646 [284 Pac. 1096, 1105].)   In this particular case these instructions on conspiracy should not have been given, because no conspiracy was charged nor was the case tried on the theory that a conspiracy existed between the defendants. On the other hand, it was stated repeatedly throughout the trial that no conspiracy existed between the defendants.   In

such event the instructions went to an immaterial matter and could only mislead the jury. ■■ Counsel for respondent contends that no error can be predicated in view of the fact that the instructions complained of constitute a correct pronouncement of the law. The law is well settled that instructions given to a jury must be adapted to the evidence and circumstances of the case on trial. To give instructions, even though they contain a correct statement of abstract legal principles, which are prejudicial will warrant a reversal of a judgment of conviction and constitutes error. See *People* v. *Savinovich*, 59 Cal. App. 240 [210 Pac. 526], involving a prosecution for arson, yet quite parallel to the case at bar.

■■ (b) The court also refused to give the following instruction requested by appellant: ''In every crime or public offense there must exist a union of intent and act or criminal negligence.'' Intent being one of the essential elements of the crime of bribery, the court should have given this instruction. The substance thereof was not contained in any other instruction given.

(c) There is no merit in the contention that the court erred in refusing to give certain other instructions asked by appellant.

II. Appellant claims error by reason of misconduct on the part of the deputies district attorney in the cross-examination of character witnesses produced by appellant, which character witnesses were asked on cross-examination as to qualities other than those asked on their direct testimony, namely, honesty and integrity. For instance, the witness Morgan T. White was asked on cross-examination if he had not heard the reputation of appellant as a brutal officer discussed, to which question objection was interposed but overruled by the court. The witness A. M. Rochlen, on cross-examination, was asked if he knew Will Anderson of the grievance committee of the bar association; whether he read the ''Bar Association Journal''. He was then asked the question: ''Don't you know that it was spread through the bar of this community by Mr. Anderson as one of the leading members of the bar, the analysis of the brutality of Mr. Sheffield?'' When objection was interposed the deputy district attorney stated: ''Alright, perhaps you are right on

that." Again James E. Davis, formerly chief of police of the city of Los Angeles, one of the principal witnesses for the defense, was asked on cross-examination as to his familiarity with the arrest of the defendant. He was then asked the question: "As a matter of fact, don't you know that it was generally reported even among public officials that at the time of his arrest, he was arrested in possession of intoxicating liquor." Then, after strenuous objection and the assignment of same as misconduct, the question was withdrawn by the deputy district attorney, whereupon the deputy district attorney stated: "I withdraw it. Let me ask you this, Mr. Witness: You addressed your opinon as to his honesty as a public official. Do you believe that a public official whose duty it is to enforce the law who drinks liquor and has it in his possession is an honest man?". Upon objection of appellant the deputy district attorney stated: "I think the objection is good, and I withdraw the question." Again in connection with the cross-examination of William W. Ashe, called as a character witness for appellant, the following took place:

"Q. Well, you heard, did you, in 1927, that Mr. Sheffield owned an airplane?

"A. I never knew it until this date, Mr. Dennison.

"Q. You heard it discussed, didn't you, in the Federal Department?

"A. No, I never did.

"Q. You belong to the Secret Service, don't you?

"A. Yes sir.

"Q. Didn't you hear it discussed that he was using that airplane for the purpose of bringing narcotics from Mexico?

"Mr. White: Now, just a minute. We object—

"A. No, sir, I did not. We don't handle narcotics in our department.

"Mr. White: Just a minute—

"Q. By Mr. Dennison: I didn't ask you what you handled over there; I asked you if you had heard it discussed over there? .

"A. No, I never did.

"Q. How long have you been over there?

"A. Been there seven years.

"Mr. White: Now, if the Court please, I desire at this time, first of all, to say that prior to asking the question of the witness as to whether he knew that Sheffield had an airplane that was being used for illegal purposes, that the witness answered Mr. Dennison that he had never heard that discussed; that, thereafter,. to get it before the jury Mr. Dennison asked the witness if he had not heard it discussed, that he, Sheffield, had used this airplane for illicit purposes. I assign that as absolutely prejudicial misconduct on the part of the District Attorney; ask the court to admonish the jury to disregard that statement of the District Attorney, in view of the fact that witness had prior to the District Attorney suggesting it, stated to the District Attorney that he had never heard it discussed.

"Mr. Dennison: I am quite certain that the jury will pass upon the answers of the witness and not the questions of the prosecutor.

Mr. White: Then I would suggest, if that is the case, that the District Attorney stop thrusting in immaterial stuff such as that, which is highly prejudicial and of no intrinsic legal value, whatever, your Honor.

"Q. By Mr. Dennison: Do you know anything of the—

"Whereupon the court instructed the jury to disregard the questions asked by the District Attorney, and take into consideration the answers only of the witness and qualified its admonition by stating 'The District Attorney has a right, of course, to ask questions of witnesses who are called upon to testify as to the reputation or character of a defendant, but the jury is instructed to disregard the effect of any questions as to rumors or reports unless the District Attorney afterwards connected those reports with the defendant'."

In connection with the witness W. C. Jaffke, a United States secret service agent, the following took place:

"Q. By Mr. White: It is agreed here between us, I think, that that Smoke Shop was closed about August 7, 1929. How did you come to make that investigation?

"A. Well, I was sitting in front of the station in a police machine, and Sheffield came up to me and asked me if we didn't have—

"Mr. Dennison: Just a moment. We object to what Mr. Sheffield said as calling for hearsay.

"Mr. White: If the Court please, we offer to prove what he said as showing and indicating to the fullest extent that he was responsible for the abating of this nuisance.

"Mr. Dennison: It is hearsay.

"The Court: It is calling for hearsay.

"Mr. White: We accept the challenge of the District Attorney to show that.

"Mr. McKay: By your own witness, you can show that, if you want to. Put your own witness on.

"Mr. Dennison: Put Mr. Sheffield on and give us a chance to cross-examine him.

"Mr. White: If the Court please, we intend to put him on, but the District Attorney has no right to make a suggestion to the defense counsel. I assign it as misconduct and prejudicial. He has no right to comment on that, and he knows it.

"Mr. McKay: We were not commenting on it.

"Mr. White: You said, 'Why don't you put him in the stand?'

"Mr. Dennison: We apologize and ask the Court to instruct the jury to disregard anything I said. It was only addressed to Mr. White; it was not for the jury.

"The Court: The jury is instructed to disregard the remarks of the District Attorney."

Again, in the examination of former Chief of Police Davis the following took place:

"Mr. Dennison: You testified, did you not, that the reputation of Mr. Sheffield for integrity was good?

"A. Yes.

"And by the integrity of a public officer, you mean a public officer who has held his hand up to the God that created him and sworn to support the Constitution of the United States of America and the State of California don't you?

"Mr. White: Objected to on the ground it is incompetent, irrelevant and immaterial, not cross-examination.

"Mr. Burke: Further, it is argumentative.

"The Court: Overruled.

"Mr. Dennison: Do you mean that by the integrity of a public officer, that he has sworn to uphold the Constitution of the United States and the Constitution of the State of California?

"A. I believe that Mr. Sheffield has taken an oath to uphold the laws of the State of California.

"Mr. Dennison: That is not the question.

"The Court: That is not the question.

"Mr. Dennison: Just a moment. Your Honor, I move to strike that out. Do you feel that integrity means where a man has taken an oath to uphold the Constitution of the State of California, that he shall be obedient to that oath?

"Mr. White: Object to that on the ground it is incompetent, irrelevant and immaterial, not proper cross-examination.

"Mr. Dennison: I withdraw the question. What do you mean by integrity?

"A. That the man is honest, conscientious, a faithful public servant who obeys the laws laid down for his guidance."

Further in the examination of Chief Davis the following took place:

"Q. Well, Chief, Officer Randolph—you knew, did you not, that Officer Randolph went upon the stand in the trial of Maceo B. Sheffield and testified that his testimony given before the Grand Jury, in relation to that killing of Sam Faulkner, was false?

"Mr. White: That is objected to on the ground that it is irrelevant and immaterial, not proper cross-examination, and I assign the asking of the question as prejudicial error.

"The Court: Objection sustained. The jury is instructed to disregard any effect of the asking of the question.

"Mr. Dennison: I believe that is all."

■ Where objection was made to these respective lines of cross-examination the court erred in overruling the objections and even though, as occurred in some instances, the deputy district attorney withdrew his questions we cannot say upon a reading of the entire record of the case the jury was not influenced by the conduct of the deputy district attorney.

III. Further error is predicated on alleged misconduct of the trial judge in examining witness ex-Chief of Police

Davis on incompetent matters. The record in this case shows a very lengthy interrogation of the witness Davis on immaterial matters, to much of which counsel for appellant failed to object, but finally did enter objections.

■ Although it is the general rule in California that before the reviewing court will consider misconduct, a foundation must be laid in the trial court, by objection and a request of the court to admonish the jury to disregard the matters toward which complaint is made, however, there is (as was said in *People* v. *Stafford, ante,* p. 26 [290 Pac. 920], a well-recognized exception to this general rule " . . . When an examination of the entire record fairly shows that the acts complained of are of such a character as to have produced an effect which, as a reasonable probability, could not have been obviated by any instructions to the jury, then the absence of such assignment and request will not preclude the defendant from raising the point in this court. (*People* v. *MacDonald,* 167 Cal. 551 [140 Pac. 256] ; *People* v. *Edgar,* 34 Cal. App. 459 [167 Pac. 891] ; *People* v. *George,* 72 Cal. App. 124 [236 Pac. 934] ; *People* v. *Frank,* 71 Cal. App. 575–585 [236 Pac. 189].)"

The court questioned Chief Davis as to whether police officers who have to do with the arrest of persistent violators of either prostitution, gambling or liquor laws reported to the district attorney their prior convictions of the same offense; and after answer given the following took place: .

"The Court. That doesn't answer my question."

After answer by the witness:

"The Court: That is not answering my question at all. My question was whether," etc.

And after several more questions and answers on the same subject matter the court continued:

"Q. I only asked the question preliminary to another one," and then proceeded to interrogate the witness relative to the fact that there was only one police officer who made such reports to the district attorney—the officer assigned to the morals efficiency association.

The trial judge also questioned Chief Davis at length in regard to search-warrants and in particular about a general order of the police commission concerning search-warrants

in liquor cases. At another time while the deputy district attorney was interrogating Chief Davis the chief finished his answer by stating:

"... In other words, he is an officer that, if the liquor had been sold to him, he would have gone directly into the premises, and he has probably kicked in a number of doors to get at the liquor supply without worrying about getting a search-warrant. Now if that is done such individuals have civil recourse.

"Q. Well, that is true—

"Q. By the Court: If that is done he is violating the law too, isn't he, Mr. Davis?"

The interrogation continued and the following questions and answers were had:

"Q. I say the officer; I am referring to the officer; he has violated the criminal law, hasn't he?

"A. He has not violated any law, that is, any criminal statute for which he can be prosecuted.

"Q. I didn't ask you that. I asked you if he was not violating the law to enter a place without a warrant.

"A. He has violated the constitutional provision, but that is one thing practiced by peace officers, and such evidence so obtained is admissible in court.

"Q. I don't care about any practice. I am asking you now about the law, under the Constitution, and the law that we have in the United States."

And again the witness was asked:

"Q. (By the Court:) You claim the Constitution does not mean anything at all when it says that premises cannot be entered without a warrant?"

After the witness' answer the court said:

"That is not an answer to the question at all. It is a very nice lecture of what officers have been doing and possibly your reasons as to why they have done it, but I am asking you whether, as Chief of Police, you would instruct your officers to violate the Constitution in order to get evidence or to make arrests?"

The foregoing serves to illustrate the nature of the matters to which complaint is directed. To recite at length the voluminous pages to which complaint is directed would not answer any useful purpose. Most of these questions and answers given show that there was a dispute between

the court and the witness concerning these immaterial matters upon which the witness was interrogated. Without doubt, questioning by the trial judge on these immaterial matters, coupled with the comments on the testimony, must have had its influence upon the jury as to the attitude of the judge toward the witness Davis, as well as toward appellant. The trial court should never inject his personal views into a trial either directly or in the manner in which he asks questions. As was said in *People* v. *Soeder*, 150 Cal. 12, at page 18 [87 Pac. 1016, 1019] : ''Under our system the trial judge is rigorously prohibited from actions or words having the effect of conveying to the jury his personal opinion as to the truth or falsity of any evidence. The determination of questions of fact must be made by the jury free from the influence that knowledge of the trial judge's views thereon might have.''

The attitude of the trial judge so far as can be discerned from the cold record, was one of seeming prejudice against the police department as a whole—against Chief Davis, called as a witness in behalf of appellant, and against appellant, a colored police officer. The record in this case shows a seeming desire on the part of the deputy district attorney and the trial court to convict appellant at any cost, even to the violation of his constitutional right to a fair and impartial trial. ▮ It is the duty of the district attorney, not to obtain convictions, but to fully and fairly present to the court the evidence material to the charge upon which the defendant stands on trial and it is the solemn duty of the trial judge to see that the facts material to the charge are fairly presented and the constitutional guaranties of a defendant neither violated nor infringed. There is nothing that arouses the conscience of the American public so much as interference with or deprivation of constitutional guaranties.

▮ IV. In addition, the court permitted jurors to ask questions of the same witness, Chief Davis, whether the officers of the morals efficiency organization were regular police officers—whether the organization was a legally organized, incorporated institution or just ''an association independent of all that''; whether it had any legal standing in court; whether the individuals thereof could be sued; whether they receive their pay through the city or police

pay-roll; whether they dictated to the police department in that particular line in any way, and whether the chief was in the courtroom when a certain witness, Smith, testified, concluding his (this particular juror's) questioning with:

"I want to be fair with you. I want to know myself. I listened to the testimony yesterday. It was testified on the stand they went down to this place down there, they only took one of the employees, without making any effort to find where the liquor was sold; they knew liquor was around there, and they made no effort to find it, no effort to get the proprietor of the place at all, just got one of his runners, that is all. Now frankly, I looked at it, as the testimony came in, as just a grandstand play of your department. Now, is that the case?"

The objection by counsel for appellant was met with:

"The Court: Let the Chief answer the question."

It would seem that in addition to trying appellant for bribery, fully as much time, if not more, was spent in trying the methods of the police department. The trial court should ever be alert to see that immaterial issues are not injected into the trial of a case.

From an examination of the entire record we cannot say that the instructions given the jury that the police department was not on trial, or the instructions relative to the attitude of the court cured the misconduct to which complaint is directed. As was said in *People* v. *Edgar*, 34 Cal. App. 459, at page 471 [167 Pac. 891, 895], that where the misconduct "is so pronounced and pernicious that it is not in human nature to forget or disregard its prejudicial effect then manifestly a mere admonition or any number of admonitions will not suffice to right the wrong done, and the only remedy remaining is to be found in a reversal of the judgment".

V. From an examination of the very lengthy transcript of the proceedings in the lower court we are unable to determine whether appellant would or would not have been convicted but for the errors of the court and the misconduct set forth. Had the jury acquitted appellant the verdict would have found abundant support in the evidence. We are of the opinion that the errors complained of have resulted in a miscarriage of justice. It is quite likely that the conviction of appellant was because of the errors and

misconduct as shown by the record. Under such circumstances the provisions of section 4½ of article VI of the Constitution may not be used in order to support a judgment of conviction. (*People* v. *Irby*, 67 Cal. App. 520 [227 Pac. 920]; *People* v. *Alpine*, 81 Cal. App. 456 [254 Pac. 281].)

VI. Insufficiency of the evidence to warrant or sustain the conviction of appellant under either counts XIII or XXIII is further urged.

As to count XIII this contention is not sustained. There being a conflict in the testimony, it was for the jury to determine the credibility of witnesses and to determine the facts in the case..

Concerning count XXIII, however, we are confronted with a novel situation. Had the jury believed the version of appellant as to the transaction about the diamond pin it should have acquitted appellant. The jury, therefore, must have convicted upon the story as told by Sebe Hendricks. He was an accomplice. (Sec. 31, Pen. Code; *People* v. *Coffey*, 161 Cal. 433 [39 L. R. A. (N. S.) 704, 119 Pac. 901].) In addition the testimony of Sebe Hendricks was a mere conclusion. Count XXIII involved the acceptance of a pin belonging to the complaining witness Sebe Hendricks, which at the time was in pawn and as the testimony showed, was redeemed from the pawn by appellant at an expense of $147.50, but no note or other papers were executed in connection with the transaction, and the said Sebe Hendricks, according to his own testimony, placed the stickpin in the necktie of appellant. He was then asked by the district attorney:

"Q. He was to hold the pin for a year, and then how much were you to pay?

"A. $247.50 with a 7 per cent interest.

"Q. And what was the extra $100.00 for?

"A. It was for the back pay of the protection money which I hadn't paid him.

"Q. These weekly $25.00 a week payments?

"A. Right."

which is substantially all of the testimony connecting appellant with the bribery in so far as count XXIII is concerned.

A reading of all the testimony on this count shows an absolute lack of corroboration of the testimony of Sebe Hendricks, the accomplice, as required by section 1111 of the Penal Code.

The judgment and order appealed from are reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.

On October 17, 1930, a portion of the original opinion filed herein was ordered stricken out and a petition for a rehearing of this cause was thereupon denied by the District Court of Appeal. Schmidt, J., *pro tem.*, dissented from the order striking out the following portion of the original opinion:

(b) Appellant claims that the trial court should have given the following instruction requested by him: "The court instructs the jury that if you have a reasonable doubt in your minds as to whether a witness was or was not an accomplice, you must resolve that reasonable doubt in favor of the defendants and presume such witness to be an accomplice." This instruction should have been given. Respondent contends that because an instruction in the language of section 1096 of the Penal Code was given no other instruction relative to reasonable doubt need be given, and in support thereof quotes section 1096a, which, in so far as reasonable doubt is concerned, reads as follows: "In charging a jury, the court may read to the jury section 1096 . . . and no further instruction defining reasonable doubt need be given." To instruct according to section 1096: "and in case of a reasonable doubt, whether his guilt is satisfactorily shown he is entitled to an acquittal, but the effect of this presumption (of innocence) is only to place upon the state the burden of proving him guilty beyond a reasonable doubt", refers to the entire case —that is, to all the evidence as applied to the charge involved. To say "no further instruction defining reasonable doubt need be given" is not a suggestion nor an inhibition not to instruct that if there is a reasonable doubt as to some element or particular phase of the case that that doubt must be resolved in favor of the defendant. Not alone must the jury resolve any reasonable doubt concerning the entire case in favor of a defendant, but the jury must likewise resolve such reasonable doubt in favor of the defend-

ant when there exists a doubt upon any material phase or element in a case. Whether a particular witness is or is not an accomplice is a separate and distinct material issue in a case, and in this case the court so instructed the jury. Here is an instance where, when considered in connection with the particular defendant, the general presumption of innocence must be somewhat reversed. In other words, the instruction is given with respect to the testimony of a particular witness and the weight to be attached to it under certain circumstances. Assuming a doubt exists, the jury must resolve that doubt in such a manner as to require the corroboration of the testimony of the witness. This we think is sufficiently different from and outside the general presumption of innocence which follows a defendant throughout the trial to have entitled him to the instruction.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 30, 1930, and the following opinion then rendered thereon:

PER CURIAM.— In denying the petition for a hearing in this court in the above-entitled cause (order entered October 30, 1930), after decision and judgment in the District Court of Appeal (*People* v. *Sheffield,* Crim. No. 1950, *ante,* p. 721 [293 Pac. 72]), we withhold our approval from that portion of the opinion of the District Court of Appeal which holds that Sebe Hendricks was an accomplice of the defendant Sheffield. (See *People* v. *Davis,* 210 Cal. 540 [29*3* Pac. 32].)

Seawell, J., Shenk, J., and Curtis, J., dissented.