[Crim. No. 4134. In Bank.—July 28, 1938.]

THE PEOPLE, Respondent, v. CHARLES O'DONNELL, Appellant.

Wm. L. Southwell, Peter J. Mullins and P. J. Murphy for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

THE COURT.—This case was heard and decided by the District Court of Appeal, First Appellate District, Division One. Thereafter a hearing was granted by this court, and we now adopt portions of the opinion of Mr. Presiding Justice Tyler, with certain additions, as the opinion of this court:

"Appellant was originally charged with a violation of section 288 of the Penal Code, relating to crimes against children. To this charge he pleaded not guilty and not guilty by reason of insanity. At the time set for trial appellant withdrew his plea of not guilty and went to trial on his plea of not guilty by reason of insanity. On this trial the jury disagreed. Thereafter the district attorney amended the information and added a second count charging the offense of rape. To both counts of this amended information appellant pleaded not guilty and not guilty by reason of insanity. Subsequently he withdrew his plea of not guilty by reason of insanity. After trial the jury found appellant guilty on both counts. In its verdict of guilty on the rape charge it recommended that the appellant be punished by imprisonment in the county jail. Motions for a new trial and in arrest of judgment were made and denied, whereupon appellant was sentenced to San Quentin on the charge of violating section 288 of the Penal Code and to the county jail for one year on the rape charge, the sentences to run concurrently. This is an appeal from the final judgment and the order denying a motion for a new trial. It is conceded there is sufficient evidence in the record to support

the conviction on the rape charge, but it is claimed there is none to support the charge under count one relating to lewd or lascivious acts against children. The further claim is made that the trial court by its conduct stripped appellant of a fair and impartial trial and erred in admitting the declarations of the child in evidence and in its instructions to the jury.

"The evidence reveals a heinous crime of the most loathsome and sordid character. Such of the facts as are necessary for a discussion of the case show that on the 5th day of September, 1936, appellant, a man sixty-two years of age, visited the home of Mr. Jannsch for dinner. There were present, Jannsch, his wife, a Mrs. Pedersen and her infant daughter three years of age. Shortly after 9 o'clock the child was put to bed. Later Mrs. Pedersen complained of a headache and she, accompanied by Jannsch and his wife, went to a drug store to obtain some aspirin. When the party returned home about half an hour later they heard the Pedersen child crying frantically in the bathroom. Mrs. Pedersen pounded on the front door and called upon appellant to open it. Receiving no response, Mrs. Jannsch requested her husband to hurry and open the door. When opened, Mrs. Pedersen accompanied by Mrs. Jannsch proceeded to the bathroom where they found the baby. She was bleeding between her legs and from her crotch. Mrs. Pedersen then went to the living room, where appellant was sitting in a chair with his eyes closed apparently asleep. She shook him and asked him what he had done to the baby. He replied that she must have fallen and cut herself. Mrs. Pedersen then returned to the bathroom and the child still crying, informed her in her simple language that appellant had put his finger into her vagina and rectum. Mrs. Pedersen took the child to the emergency hospital and notified the police. They went to the house and found appellant still in the chair with his eyes closed. When accused of having harmed the child he denied the charge. He was then taken to the bathroom by the officers and his clothes examined. The front of his trousers, at the fly, were stained with a whitish substance mixed with blood. He was returned to the living room, where one of the officers asked the little child in the presence of appellant who had injured her, and she pointed to appellant. He was then taken to his

home and his clothes were taken charge of by the officers. Upon examination by a physician the child's vagina was found torn and bleeding, and inside the vaginal cavity were found male procreative germs. Appellant's trousers and the cushion of the chesterfield in the living room, where he had been, were examined, and blood and spermatozoa were found on both. Blood was also found on the slip which had been worn by the child. This in substance constitutes the evidence in the case.

■ "It is difficult to understand why the jury, having found defendant guilty of rape, could have made the recommendation it did. It is admitted that the evidence is sufficient to sustain that charge, but it is claimed there is no evidence tending to show that appellant violated section 288 of the Penal Code. In this connection it is claimed that the lewd and lascivious acts were part of and became merged in the rape charge, for which reason appellant could not be punished under the provisions of section 288 of the Penal Code. The fact that appellant was convicted upon the charge of rape does not necessarily prevent him from being punished under section 288 for any of the acts committed prior thereto. If any one of the antecedent acts of lewd and lascivious conduct was committed without the intent to commit rape, but simply to gratify appellant's lustful passion, and then later, emboldened by his success and further inflamed with passion, he conceived the further nefarious intent to penetrate the body of the child, the antecedent acts prior to the rape are punishable under the section involved. This question is fully discussed in *People* v. *Parker,* 74 Cal. App. 540 [241 Pac. 401], and need not be pursued further here. In *People* v. *Lind,* 68 Cal. App. 575 [229 Pac. 990], it was held that one who had committed lewd and lascivious acts leading up to the consummation of the crime of sodomy might be punished for his preliminary acts under section 288 of the Penal Code. So, also, in *People* v. *Bronson,* 69 Cal. App. 83 [230 Pac. 213], it was held that acts committed upon the body of a child immediately preceding the accomplishment of the act of sexual intercourse would bring such conduct within the condemnation of the section. (See, also, *People* v. *Agullana,* 4 Cal. App. (2d) 34 [40 Pac. (2d) 848] ; *People* v. *Meyer,* 94 Cal. App. 696 [271 Pac. 751] ; *People* v. *Piburn,* 138 Cal. App. 56 [31, Pac. (2d) 470].)"

 The statement made by the child to her mother should not have been admitted in evidence. It was not a part of the *res gestae* but a declaration of a past event. In *People* v. *Perkins*, 8 Cal. (2d) 502 [66 Pac. (2d) 631], this court recently said that to be within the rule of *res gestae* "the declaration must be 'the natural and spontaneous outgrowth of the act or assault', and not a mere narration of a past transaction". In the earlier case of *People* v. *Mahoney*, 201 Cal. 618 [258 Pac. 607], the court laid down the requirement that to come within the rule allowing declarations to be admissible as part of the *res gestae* they must possess the characteristics defined in Underhill's Criminal Evidence as follows: "First, they must have been uttered contemporaneously with and grow out of the act upon which they have a bearing so as to be spontaneous and not narrative; second, they must qualify, illustrate, explain and unfold its character or significance, so as, third, to be connected with it in such a manner that the declaration and the act form a single and indivisible transaction." These cases state and apply a fundamental rule which has long been part of the law of evidence. Measured by that rule the declaration of the child was inadmissible as evidence against the defendant.

However, aside from the testimony relating the statement of the child, there is other evidence directly connecting him with the commission of the offense. To have accomplished the act of rape he must have exposed his private parts and those of the child. Such acts constitute a violation of section 288 of the Penal Code and were independent of the rape. (*People* v. *King*, 65 Cal. App. 306 [223 Pac. 1001].) The evidence challenged by the defendant was, therefore, fully covered by other evidence which was properly admitted and an examination of the entire record shows that there has been no miscarriage of justice. The error complained of does not, therefore, entitle the defendant to a reversal of the judgment. (Art. VI, sec. 4½, Const.)

 "Numerous charges of misconduct on the part of the court during the presentation of the evidence are assigned as prejudicial error. To many of these remarks no assignment of error was claimed, nor was a request made that the jury be instructed to disregard them. Complaint is also made that the district attorney was guilty of prejudicial misconduct in the examination of appellant's brother. The witness was

asked if he ever had any difficulty with appellant concerning his conduct toward his daughter. Appellant claims that the question was propounded in bad faith, and that it was prejudicial to him. Assuming the question to have been improper, the answer was favorable to appellant and could not have been to his prejudice. (8 Cal. Jur., p. 628.) Moreover, no assignment of misconduct was made, and in the absence thereof the question cannot be raised for the first time on appeal. (*People* v. *Fodera,* 33 Cal. App. 8 [164 Pac. 22].)

The record shows that the trial judge was impatient with counsel for the defense and also with the district attorney as to the manner in which the trial was being conducted and made many remarks that may well have been left unsaid. We do not deem a recital of these remarks to be necessary. We have considered them and no doubt some of them were improper and beyond the privilege of the court. A trial judge is rigorously prohibited from action or words having the effect of conveying to the jury his personal opinion as to the truth or falsity of any evidence. This rule should be strictly adhered to. We cannot say, however, considering the conclusiveness of the evidence, that any of them resulted in a miscarriage of justice. At the conclusion of the case the court instructed the jury to disregard any remarks that were made from which it might gain the impression that the court had an opinion concerning any fact, and it was instructed that the facts were for its exclusive consideration. And finally, complaint is made of certain instructions which it is claimed were prejudicial to the rights of appellant. We have carefully examined the instructions and see no error therein.''

The judgment and order are affirmed.

EDMONDS, ·J., Dissenting.—I dissent. The record in this case shows that the defendant was convicted upon a trial during which the judge was guilty of misconduct which no appellate court should either excuse or ignore. The fact that the evidence points very conclusively to the defendant's guilt does not take from him his right to a fair and impartial trial. One charged with crime is presumed to be innocent until the contrary is proved. The privilege of a trial judge to comment upon the evidence does not authorize him to either assume the role of prosecutor or to convey to the jury his personal opinion concerning any question of fact. (*Peo-*

*ple* v. *Talkington,* 8 Cal. App. (2d) 75 [47 Pac. (2d) 368]; *Hunter* v. *United States,* 62 Fed. (2d) 217, 220.) It is his duty to insure the defendant his constitutional rights, and to maintain an attitude of unswerving impartiality between the prosecution and the defense, regardless of the seriousness of the crime or his own certainty of the defendant's guilt. (*People* v. *Sheffield,* 108 Cal. App. 721, 732 [293 Pac. 72]; *People* v. *Brady,* 56 Cal. App. 777, 789 [206 Pac. 668]; *People* v. *Hartman,* 103 Cal. 242, 245 [37 Pac. 153, 42 Am. St. Rep. 108].)

Throughout the trial of this case the judge showed intense animosity toward the defendant and his counsel. Thirty-five instances of asserted misconduct are cited as grounds for reversal of the judgment. Apparently the nature of the offense with which the defendant was charged improperly influenced the judge and caused him to make rulings which have no legal support. Upon the hearing of a motion for a new trial he very frankly stated that having a belief in O'Donnell's guilt, "perhaps the Court was incapable of concealing entirely his strictly personal sentiments toward the defendant". A more accurate statement would be that from the beginning of the trial to its conclusion his "sentiments toward the defendant" were expressed by statements made to or before the jurors which could only mean that he expected and desired them to return verdicts of guilty. Moreover, his comment upon the conduct of defendant's counsel was both intemperate and unjustified. It indicated that he believed they were presenting a defense which was entirely without merit.

For example, in a discussion concerning the proceedings upon a former trial of the defendant, it was stated that he had entered a plea of not guilty by reason of insanity to the information as originally filed. "And that," said the judge, "implies guilt upon his part". In his instructions to the jury the judge again referred to this plea. After stating that the defendant had been tried upon the original information to which the defendant pleaded not guilty by reason of insanity, he said that "the jury were unable to agree as to whether the defendant was sane or insane at the time he committed the offense of violating section 288 of the Penal Code". The record also shows that the defendant was asked about this plea when he testified as a witness in

his own behalf. He explained that he entered it upon the advice of his then counsel "not knowing that when I made that plea of not guilty by reason of insanity' that I was making a plea of guilty, until I heard the judge make the assertion here, and when I tried to get my attorneys to contradict the judge they said 'Sit down and shut up'". The deputy district attorney then stated he had no further questions, whereupon the judge said, "Yes, get away. I do not know whether he has attorneys any more. Do you gentlemen still appear for him?" The reply of Mr. Mullins to this question was, "Yes, your Honor, and will continue to." The judge concluded with the remark, "I sympathize with counsel for the defendant now."

The defendant also cites as misconduct many remarks of the trial judge which were made during the examination of witnesses. During the cross-examination of an expert who testified concerning the result of certain chemical tests the judge said, "I am not going to permit the character of the testimony of a perfectly disinterested expert to be questioned, not when there is very good reason for it." Another expert witness for the prosecution, the examining physician for the San Francisco juvenile court, testified that she had thrown away the slides containing smears which had been analyzed. On cross-examination she was asked: "You do not consider there is any further value to these smears?" The deputy district attorney objected to this question, whereupon the judge said: "Objection sustained. I said yesterday, counsel, that I am not going to permit counsel, even by inference, to throw discredit upon the testimony of public officials who come here to testify, who are perfectly disinterested, and testify to facts within their own knowledge." At another time he said: "That is a silly theory, counsel. You are so subtle that you are over my head altogether."

Although many of the statements made by the judge were not assigned as error at the time of their occurrence, the record shows that with one exception, every claim of misconduct which was made during the trial was disregarded by him. The general rule that remarks which are relied upon as misconduct must be objected to at the time they are made and the court requested to admonish the jury concerning them or they will not be considered as ground for reversal of the judgment upon appeal, has one well-recognized ex-

ception to it. Where an examination of the entire record shows a persistent course of conduct from which it is apparent that objection would have been useless, or, if the acts complained of are of such a character that no admonition to the jury would have removed their effect, then the absence of an assignment of error at the time the remark was made will not preclude one from raising the point upon appeal. (*People* v. *Mahoney*, 201 Cal. 618, 622 [258 Pac. 607]; *People* v. *Frank*, 71 Cal. App. 575, 585 [236 Pac. 189].) The present case clearly comes within the exception and is a striking example of the necessity for it.

Nor does the fact that a record shows evidence which, if believed, points unmistakably to the defendant's guilt, save the judgment from reversal under article VI, section 4½, of the Constitution. Even convincing proof of a defendant's guilt does not necessarily mean that there has been no miscarriage of justice. (*People* v. *Mahoney, supra; People* v. *Patubo*, 9 Cal. (2d) 537 [71 Pac. (2d) 270, 113 A. L. R. 1303].) A defendant is presumed to be innocent until conviction and is entitled to a fair trial. When that right is violated it amounts to a denial of due process of law. (*Powell* v. *Alabama*, 287 U. S. 45, 52 [53 Sup. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527].) The purpose of a trial is to present the facts in a given case. From those facts and the law applicable to them, the determination of guilt or innocence is to be reached.

When a trial judge persists in statements before the jury which plainly indicate his belief in the defendant's guilt, extols the prosecution's witnesses, forbids their cross-examination, belittles defendant's counsel by frequent comments concerning the presentation of the defense and generally discredits their efforts, every principle of law demands a new trial.

For these reasons both the judgment and the order denying a new trial should be reversed.

Houser, J., concurred.

SEAWELL, J., Concurring.—It is my view of the law that the errors pointed out in the main dissenting opinion are not curable under any remedial provisions of the statute or Constitution and compel a reversal of the order and

judgment. I therefore join in the views expressed by my associates that the order and judgment appealed from should be reversed.

Rehearing denied.

Seawell, J., Edmonds, J., and Houser, J., voted for a rehearing.